# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 15-713


**STATE OF LOUISIANA**

**VERSUS**

**JEFFREY STEVEN DOISE**


**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 39465-11
HONORABLE DAVID ALEXANDER RITCHIE, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

## DAVID KENT SAVOIE
## JUDGE

**\*\*\*\*\*\*\*\*\*\***

Court composed of Marc T. Amy, Billy Howard Ezell, and David Kent Savoie, Judges.


**AFFIRMED; REMANDED WITH INSTRUCTIONS.**

**John Foster DeRosier**
**District Attorney - Fourteenth JDC**
**Robert R. "Rick" Bryant**
**Ross Murray**
**Carla S. Sigler**
**Assistant District Attorneys**
**Post Office Box 3206**
**Lake Charles, LA  70602-3206**
**(337) 437-3400**
**COUNSEL FOR APPELLEE:**
     **State of Louisiana**

**Hon. James D. "Buddy" Caldwell**
**Attorney General**
**Andrea Barient**
**Colin Clark**
**Assistant Attorneys General**
**Post Office Box 94005**
**Baton Rouge, LA  70804-9005**
**(225) 326-6200**
**COUNSEL FOR OTHER APPELLEE:**
     **Office of the Attorney General, State of Louisiana**

**Paula C. Marx**
**Louisiana Appellate Project**
**Post Office Box 80006**
**Lafayette, LA  70598-0006**
**(337) 991-9757**
**COUNSEL FOR DEFENDANT/APPELLANT:**
     **Jeffrey Steven Doise**

**SAVOIE, Judge.**

On October 27, 2011, Defendant, Jeffrey Steven Doise, was charged with the second degree murder of his foster mother, Susan Doise, a violation of La.R.S. 14:30.1. Defendant pled not guilty to the charge on November 3, 2011. Thereafter, on May 29, 2012, Defendant withdrew his plea of not guilty and entered a plea of not guilty and not guilty by reason of insanity. On June 15, 2012, the State filed a Motion to Appoint Sanity Commission to evaluate Defendant's mental condition at the time of the offense. Pursuant to the motion, the trial court appointed Dr. James Anderson to examine and render a report on Defendant's mental condition at the time of the offense. Dr. Anderson submitted a report on May 5, 2013, concluding that Defendant did not suffer from a mental disease or defect which rendered him incapable of distinguishing right from wrong during the commission of the offense.

In Defendant's July 19, 2012 Motion to Quash to Indictment, Defendant argued that he was a juvenile and could not be sentenced to life imprisonment without parole.[1] The trial court denied the motion to quash on August 22, 2012. Thereafter, on October 5, 2012, Defendant filed a Motion to Appoint Sanity Commission to evaluate Defendant's mental competency to assist in his defense. On that same date, the trial court appointed a sanity commission to determine Defendant's mental capacity to proceed. On December 5, 2012, the trial court found Defendant capable of proceeding to trial.

---

[1] In *Miller v. Alabama*, ___ U.S. ___, 132 S.Ct. 2455 (2012), the Supreme Court uses the term "juvenile" to refer to anyone who committed a crime while under the age of eighteen. The term "juvenile" is commonly used in Louisiana courts to refer to a person who is under the age of seventeen at the time of the commission of an offense. *See* La.Ch.Code art. 804 (which defines a "child" for purposes of delinquency as "any person under the age of twenty-one . . . who commits a delinquent act before attaining seventeen years of age"). Since *Miller* is the pertinent authority in this appeal, our use of the term "juvenile" in this opinion refers to a person who is under the age of eighteen at the time the offense was committed.

On February 11, 2015, Defendant filed a Motion Challenging the Constitutionality of C.Cr.P. Article 87[8].1 with Incorporated Memorandum. At a hearing held on March 9, 2015, the trial court denied the motion. At that same proceeding, the Defendant withdrew his former plea of not guilty and not guilty by reason of insanity and entered a *Crosby* plea to second degree murder. *See State v. Crosby*, 338 So.2d 584 (La.1976). Defendant specifically reserved his right to appeal the following: (1) the trial court's ruling on the constitutionality of the sentencing provision; (2) the trial court's denial of Defendant's motion to have an expert (Dr. Bauer) testify at the guilt phase; (3) the trial court's denial of Defendant's Motion to Quash the Indictment; and (4) the trial court's denial of Defendant's request for a unanimous-verdict jury instruction.

Based on a joint recommendation, Defendant was sentenced to life in prison with eligibility for parole after serving thirty-five years, otherwise the sentence was imposed without probation, parole, or suspension of sentence. Defendant filed a Motion to Reconsider Sentence on March 11, 2015, which was denied on that same date. Defendant filed a Notice of Appeal and Motion to Appoint Appellate Counsel, which was granted on March 12, 2015. Defendant is currently before the court alleging three assignments of error. For the following reasons, we affirm and remand with instructions.

## FACTS

The following factual basis was given by the State in support of the Defendant's plea:

> Your Honor, on September 29th of 2011 Mr. Kyle Doise, who had been working out of town, returned home to his residence at 1313 Jefferson Drive. When he arrived home he found his wife, Susan, missing. He also saw that his wife's vehicle was missing. He found his four year old son, Garrett, alone under some sheets in a bed. He

2

also observed a 357 magnum under the bed in the bedroom where it should not have been. He contacted 911, indicated his wife was missing. The officers of the Lake Charles Police Department arrived, they looked in the house, and they went to the bathroom where Mr. Doise had not gone and they found Susan Doise had been shot and found dead in the bathtub. Garrett had been, the four year old son of Susan, had apparently been alone in the house for some 10 hours. Jeffrey Doise, who is the foster son of Susan, had left that night in the vehicle and gone to his girlfriend's home in a Chevy Tahoe. He was later found that morning by officers of the Calcasieu Parish Sheriff's Office in a shed hiding behind the house. He was brought back to the Lake Charles Police Department where he gave a full confession to shooting his foster mother because he was angry. Mr. Doise's date of birth at the time of the shooting was September 12th of 1994, making him 17.

## ERRORS PATENT

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, we find no errors patent present.

## ASSIGNMENT OF ERROR NUMBER ONE

In this assignment of error, Defendant claims that the trial court erred in rejecting a challenge to the constitutionality of La.Code Crim.P. art. 878.1, the sentencing provision enacted by the Louisiana Legislature in response to the United States Supreme Court's opinion in *Miller v. Alabama*, ___ U.S. ___, 132 S.Ct. 2455 (2012), which held that a juvenile homicide offender cannot be sentenced to life without parole unless certain mitigating factors are considered.[2] Defendant filed a Motion Challenging the Constitutionality of C.Cr.P. Article 87[8].1 in the trial court. At a hearing held March 9, 2015, defense counsel argued the following:

---

[2]Defendant committed the present offense before *Miller* was decided. Because he had not been sentenced, however, *Miller* and the subsequent Louisiana Legislative enactments are applicable. *See State v. Tate*, 12-2763 (La. 11/5/13), 130 So.3d 829, *cert. denied*, ___ U.S. ___, 134 S.Ct. 2663 (2014); *see also State v. Williams*, 12-1766 (La. 3/8/13), 108 So.3d 1169.

Essentially it's our position that the statute is -- the legislature passed it in 2013, it's far outside the letter or the spirit of the Supreme Court's ruling in *Miller v. Alabama*; that essentially as I read *Miller* the Supreme Court was giving the trial judges discretion to determine what the sentence should be. The legislature, however, in its post-*Miller* legislation, instead of giving the Court a range, saying 20 to life, or some other criteria, simply said that the Court should determine whether or not the offender is one of the worst offenders and this is one of the worst offenses within the realm of homicides and if they're the worst offender and the worst offense they get life without parole. It it's not they get life with parole after 35 years served and a certain quality of prison record.

I don't think that's giving the Court much discretion at all and I think it's less than what the Supreme Court intended, although it's certainly what the legislature intended and, therefore, I'm asking the Court to overturn Article 871.1 [sic] of the Code of Criminal Procedure as not being in the spirit of *Miller v. Alabama* or the letter of *Miller v. Alabama* and I know we discussed this in the back and Mr. Murray gave a compelling State reason for a different position.

After the State argued that the article was constitutional, the trial court denied Defendant's motion, finding that La.Code Crim.P. art. 878.1 in conjunction with La.R.S. 15:574.4(E) provided an adequate constitutional remedy to the United States Supreme Court's ruling in *Miller*. Defendant then entered a *Crosby* plea to second degree murder and was sentenced to the jointly recommended sentence of life in prison with the eligibility for parole after serving thirty-five years.

On appeal, Defendant argues that La.Code Crim.P. art. 878.1 is unconstitutional in light of the United States Supreme Court's opinion in *Miller* because Article 878.1 still provides for an automatic life sentence without parole, probation, or suspension of sentence, with the eligibility for parole occurring only after the defendant serves thirty-five years. In *Miller*, the Supreme Court held that a defendant under the age of eighteen at the time he committed a homicide cannot automatically be sentenced to life imprisonment without parole. *Miller*, ___U.S.___. Instead, the Supreme Court held the sentencer must have the

4

opportunity to consider mitigating factors, such as the defendant's youth, before imposing the severe penalty. *Id.* In response to the Supreme Court's opinion in *Miller*, the Louisiana Legislature enacted La.Code Crim.P. art. 878.1 and La.R.S. 15:574.4(E). Louisiana Code of Criminal Procedure Article 878.1 provides:

> A. In any case were an offender is to be sentenced to life imprisonment for a conviction of first degree murder (R.S. 14:30) or second degree murder (R.S. 14:30.1) where the offender was under the age of eighteen years at the time of the commission of the offense, a hearing shall be conducted prior to sentencing to determine whether the sentence shall be imposed with or without parole eligibility pursuant to the provisions of R.S. 15:574.4(E).

> B. At the hearing, the prosecution and defense shall be allowed to introduce any aggravating and mitigating evidence that is relevant to the charged offense or the character of the offender, including but not limited to the facts and circumstances of the crime, the criminal history of the offender, the offender's level of family support, social history, and such other factors as the court may deem relevant. Sentences imposed without parole eligibility should normally be reserved for the worst offenders and the worst cases.

If a trial court decides that a defendant's sentence will be imposed with parole eligibility, the following section of La.R.S. 15:574.4 provides:

> E. (1) Notwithstanding any provision of law to the contrary, any person serving a sentence of life imprisonment for a conviction of first degree murder (R.S. 14:30) or second degree murder (R.S. 14:30.1) who was under the age of eighteen years at the time of the commission of the offense shall be eligible for parole consideration pursuant to the provisions of this Subsection if a judicial determination has been made that the person is entitled to parole eligibility pursuant to Code of Criminal Procedure Article 878.1 and all of the following conditions have been met:

> (a) The offender has served thirty-five years of the sentence imposed.

> (b) The offender has not committed any major disciplinary offenses in the twelve consecutive months prior to the parole hearing date. A major disciplinary offense is an offense identified as a Schedule B offense by the Department of Public Safety and Corrections in the Disciplinary Rules and Procedures for Adult Offenders.

5

(c)  The offender has completed the mandatory minimum of one hundred hours of prerelease programming in accordance with R.S. 15:827.1.

(d)  The offender has completed substance abuse treatment as applicable.

(e)  The offender has obtained a GED certification, unless the offender has previously obtained a high school diploma or is deemed by a certified educator as being incapable of obtaining a GED certification due to a learning disability.  If the offender is deemed incapable of obtaining a GED certification, the offender shall complete at least one of the following:

(i)  A literacy program.

(ii)  An adult basic education program.

(iii)  A job skills training program.

(f)  The offender has obtained a low-risk level designation determined by a validated risk assessment instrument approved by the secretary of the Department of Public Safety and Corrections.

(g)  The offender has completed a reentry program to be determined by the Department of Public Safety and Corrections.

(2)  For each offender eligible for parole consideration pursuant to the provisions of this Subsection, the board shall meet in a three-member panel, and each member of the panel shall be provided with and shall consider a written evaluation of the offender by a person who has expertise in adolescent brain development and behavior and any other relevant evidence pertaining to the offender.

(3)  The panel shall render specific findings of fact in support of its decision.

On appeal, Defendant contends that these two provisions do not satisfy *Miller* because "Louisiana does not often, if ever, release people convicted of homicide on pardon or parole."  *Miller*, ___U.S.___.  He further argues that "[m]ere access to the Parole Board for consideration for early release does not satisfy *Miller*."  Arguing the point even further, Defendant states:

Louisiana took the most narrow reading of *Miller* in crafting a statute which effectively preserves the brutal Life Sentence for

6

offenders under 18 by limiting sentencing courts solely to ". . . whether the sentence shall be imposed with or without parole eligibility." La.C.Cr.P. art. 878.1. This limiting language means that there is no change in Louisiana, and the mere administrative potential provided by "eligibility" is meaningless in Louisiana history. The article's recitation of mitigation and aggravation as part of this hearing is vitiated by the impotence of the trial court to follow Miller's guidance that "[t]he concept of proportionality is central to the Eighth Amendment." Instead, Louisiana holds fast to the automatic life sentence, and makes only the slightest change by giving "eligibility" to an administrative remedy decades after the sentence begins.

Since an inmate has no right to parole, Defendant claims that Louisiana has "effectively denied what Miller sought to guarantee: that a child sentenced in a heinous case of homicide still had to be considered child by child, not the same way adult homicide offenders are." For these reasons, Defendant concludes that "[h]e should have been granted a sentencing hearing by a court with the power and authority to properly apply the Eighth Amendment as described in Miller," and the failure to provide such a hearing "was the application of an Unconstitutional Statute in an Unconstitutional way."

The Attorney General begins its response brief with a reminder that statutes are presumed to be constitutional:

> Statutes are presumed to be valid, and the constitutionality of a statute should be upheld whenever possible. Because a state statute is presumed constitutional, the party challenging the statute bears the burden of proving its unconstitutionality. *State v. Bazile*, 2012-2243 (La. 05/07/13), 144 So.3d 719, 732, *reh'g denied* (Aug. 30, 2013) (citations omitted).

The Attorney General then states that Defendant reads *Miller* too broadly and that nothing in *Miller* disallows a state from requiring a mandatory life sentence with the possibility of parole for a juvenile homicide offender. Additionally, the Attorney General asserts that there is no Louisiana jurisprudence that supports Defendant's argument that La.Code Crim.P. art. 878.1 fails to properly implement

*Miller*. In fact, the Attorney General points out that the second circuit denied a constitutional challenge to La.Code Crim.P. art. 878.1 in *State v. Fletcher*, 49,303, pp. 11-13 (La.App. 2 Cir. 10/1/14), 149 So.3d 934, 942, *writ denied*, 14-2205 (La. 6/5/15), 171 So.3d 945, *cert. denied*, ___ U.S. ___, 136 S.Ct. 254 (2015):

> We find no error in the trial court's denial of the defense motion to declare the statutes unconstitutional. Like the trial court, we observe that the *Miller* court was presented with an opportunity to categorically declare that no juvenile murderer shall be imprisoned without benefit of parole, but it specifically refused to do so. The Supreme Court plainly recognized that the circumstances of some murders and the characters of some juvenile killers would warrant the imposition of the "harshest possible penalty," and it gave the sentencer latitude to respond appropriately to those situations.
>
> The Louisiana legislature promptly addressed the *Miller* directive against mandatory life-without-parole sentences for juvenile killers by devising a sentencing procedure which would require that a trial court sentencing a youthful offender review all pertinent factors before determining whether parole eligibility was warranted. By its very application to only murderers under the age of 18, the provisions of La. C. Cr. P. art. 878.1 mandating a sentencing hearing at which the defense will be given an opportunity to present mitigating factors− which obviously include the defendant's age as an important part of his social history−satisfy *Miller*'s requirement that mitigating factors favoring a juvenile killer be heard in a proceeding held for that purpose. Furthermore, we find that *Miller* does not require deferral to the distant future of the determination of whether to allow parole eligibility.
>
> Contrary to the defendant's claim, the legislature was not required to amend the second degree murder statute itself to provide for sentencing of juvenile killers. As noted by the attorney general, life without parole is still a constitutionally acceptable sentence for adult killers and it is not a prohibited sentence for *all* juvenile killers. Our legislature carefully designed an adequate solution by adding a new statute pertaining to parole eligibility for juvenile killers which is to be read in conjunction with the first and second degree murder statutes. In the event that the trial court imposes a life sentence with parole eligibility, La. R.S. 15:574.4(E) provides conditions which must be satisfied before the defendant can apply to the parole board for parole consideration.
>
> Based on the foregoing, we find no constitutional deficiencies under *Miller* in the challenged Louisiana statutes, and we affirm the ruling made below.

The Attorney General also argues that the argument raised by Defendant – the mere possibility of parole is not sufficient to satisfy *Miller* – has already been rejected in principle by the Louisiana Supreme Court. In *State v. Shaffer*, 11-1756 (La. 11/23/11), 77 So.3d 939, the supreme court addressed the United States Supreme Court case of *Graham v. Florida*, 560 U.S. 48, 130 S.Ct. 2011 (2010), in which the Supreme Court held that a juvenile who commits a *non-homicide* offense cannot be sentenced to life without parole. After the *Graham* decision, Louisiana defendants who had been convicted of aggravated rapes committed when they were under the age of eighteen sought to have their life sentences set aside and to be resentenced. *Shaffer*, 77 So.3d 939. Rather than remand for resentencing, the Louisiana Supreme Court simply amended the life sentences to delete the restriction on parole eligibility. *Id*. The supreme court clarified its holding as follows:

> We reiterate that this Court is not ordering relators released on parole. The determination of whether relators may be released on parole falls within the exclusive purview of the Board of Parole, charged with the duty of ordering parole "only for the best interest of society, not as an award of clemency." La. R.S. 15:574.4.1(B). Access to the Board's consideration will satisfy the mandate of *Graham*.

*Id.* at 943.

In his brief, the Attorney General argues that he fails to see how life with the possibility of parole is a permissible alternative for juveniles who have committed *non-homicide* offenses but is not a permissible alternative for juveniles who have committed *homicide* offenses. We agree. Under *Graham*, a juvenile who commits a non-homicide offense punishable by life imprisonment *must* be *eligible* for parole. *Graham*, 560 U.S. 48. However, as the Louisiana Supreme Court held in *Shaffer*, the juvenile may not be *released* on parole unless the Board of Parole

9

decides to release him. *Shaffer*, 77 So.3d 939. Thus, in reality, a juvenile who commits a non-homicide offense punishable by life in Louisiana is only promised the possibility of being released on parole. It stands to reason that a juvenile who commits a *homicide* offense punishable by life imprisonment should be granted no greater relief. As the Attorney General points out, if the mere possibility of being released on parole is sufficient to satisfy the mandatory parole eligibility established in *Graham* for juvenile non-homicide offenders, the mere possibility of being released on parole is more than sufficient to satisfy the chance of parole eligibility after a hearing established in *Miller* for juvenile homicide offenders. As the Louisiana Supreme Court held in *Shaffer* regarding *Graham*, the mere access to the Board of Parole's consideration satisfies the mandates of *Miller.*

For the foregoing reasons, Defendant fails to prove that the statutory scheme implemented by the Louisiana Legislature in response to *Miller* is unconstitutional. Accordingly, this assignment lacks merit.

## ASSIGNMENT OF ERROR NUMBER TWO

In this assignment of error, Defendant asserts that La.Code Crim.P. art. 878.1 is unconstitutional because the trier of fact is not required to consider specific factors prior to its determination that a juvenile is not eligible for parole. Defendant makes two arguments in support of this assignment. First, Defendant argues that Article 878.1 fails to give sufficient guidance to the sentencer in "narrowing the pool of juvenile offenders who are convicted of murder and subject to a sentence of life without the possibility of parole." Second, Defendant cites *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348 (2000), and argues that the jury, being the fact-finder, should decide beyond a reasonable doubt any factors that determine whether a juvenile homicide offender is sentenced to life without

parole. For the reasons that follow, we find that the first argument lacks merit. The second argument was not sufficiently raised in the trial court and is, therefore, waived.

In his first argument, Defendant asserts that Article 878.1 fails to give the sentencer specific guidance in determining whether a juvenile should be eligible for parole:

> The Legislature has failed to give sufficient guidance to the sentencer in narrowing the pool of juvenile offenders who are convicted of murder and subject to a sentence of life without the possibility of parole. Article 878.1 does not *require* the sentencer to consider these factors at sentencing; instead, it allows the parties to offer relevant evidence in this regard. Even if offered, the article does not require the sentencer to specifically consider this fact, just as a sentencer need not consider each factor set forth in La. Code Crim.P. art. 894.1. Since the sentencer is not mandated to consider these specific factors, it fails to comply with *Miller.*

> Life without parole for a juvenile is akin to the death penalty. *Miller*, supra. To pass constitutional muster, a state's capital sentencing regime must "genuinely narrow the class of persons eligible for the death penalty." *Lowenfield v. Phelps*, 484 U.S. 231, 244 (1988) quoting *Zant v. Stephens*, 462 U.S. 862, 877 (1983). This requires state legislatures to provide clear guidance and a "meaningful basis for distinguishing the few cases in which the penalty is imposed from the many cases in which it is not." *Godfrey v. Georgia*, 466 U.S. at 420, (1980), quoting *Gregg v. Georgia*, 428 U.S. 153, 187 (1976) quoting Furman, 408 U.S. at 313 (White, J., concurring).

Although this argument was not orally presented to the trial court, we find it was raised amongst the various other arguments asserted in the written motion:

> [W]ithout a clearly defined list of aggravating circumstances that narrow the pool of juveniles convicted of murder who are eligible for the harshest sentence, the statute violates the Eighth Amendment. Without such enumerated factors, and without a requirement that the State specify which factors it will attempt to prove, and that jurors specify which they find apply beyond a reasonable doubt, the statute's sentencing scheme violates the Eighth Amendment. . . .
>
>    . . . .

11

The bare-bones sentencing procedure outlined in La. C.Cr.P. art. 878.1 is in violation of the Eighth and Fourteenth Amendments. Applying it allows, and in fact requires, standardless sentencing discretion to impose the harshest available punishments, which the Louisiana and United States Supreme Courts have repeatedly found antithetical to a reasoned, non-arbitrary decision.

We find nothing in *Miller* that requires the trial court to consider certain factors prior to determining whether the juvenile's sentence will be imposed with or without parole. Rather, *Miller* simply held "that the Eighth Amendment forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders." *Miller*, ___U.S. at ___. Such a sentencing scheme, the Supreme Court held, makes "youth (and all that accompanies it) irrelevant to imposition of that harshest prison sentence . . . ." *Id*. Earlier in its opinion, the Supreme Court discussed the factors that a mandatory life without parole sentencing scheme ignores:

> To recap: Mandatory life without parole for a juvenile precludes consideration of his chronological age and its hallmark features–among them, immaturity, impetuosity, and failure to appreciate risks and consequences. It prevents taking into account the family and home environment that surrounds him–and from which he cannot usually extricate himself–no matter how brutal or dysfunctional. It neglects the circumstances of the homicide offense, including the extent of his participation in the conduct and the way familial and peer pressures may have affected him. Indeed, it ignores that he might have been charged and convicted of a lesser offense if not for incompetencies associated with youth–for example, his inability to deal with police officers or prosecutors (including on a plea agreement) or his incapacity to assist his own attorneys. . . . And finally, this mandatory punishment disregards the possibility of rehabilitation even when the circumstances most suggest it.

*Id.* at ___ (citations omitted).

It is clear that the United States Supreme Court intended the sentencer to have the freedom to consider the above factors when imposing a sentence on a juvenile homicide offender, but the Court did not mandate that certain factors be

considered. In fact, the Supreme Court set forth the above factors as examples of what a sentencer should be able to consider while intending the sentencer to consider any other factors he deemed relevant. Louisiana Code of Criminal Procedure Article 878.1 likewise gives the sentencer examples of what it may consider when deciding whether a juvenile homicide offender is eligible for parole but also allows the sentencer the freedom to consider any other relevant factors:

> B. At the hearing, the prosecution and defense shall be allowed to introduce any aggravating and mitigating evidence that is relevant to the charged offense or the character of the offender, including but not limited to the facts and circumstances of the crime, the criminal history of the offender, the offender's level of family support, social history, and such other factors as the court may deem relevant. Sentences imposed without parole eligibility should normally be reserved for the worst offenders and the worst cases.

We find La.Code Crim.P. art. 878.1 satisfies the United States Supreme Court's pronouncement in *Miller* that the sentencer must consider relevant factors pertinent to juveniles when deciding whether to allow a juvenile homicide offender the benefit of parole eligibility.

In his second argument Defendant cites *Apprendi*, 530 U.S. 466, and argues that the jury, being the fact-finder, should decide beyond a reasonable doubt any factors that determine whether a juvenile homicide offender is sentenced to life without parole. Defendant did not raise this argument in the trial court and is precluded from raising it on appeal. Uniform Rules—Courts of Appeal, Rule 1-3. Defendant did not mention *Apprendi* in his twenty-seven page motion filed in the trial court nor did he mention it in his oral argument at the hearing on the motion. In several sentences throughout his motion, Defendant mentioned that La.Code Crim.P. art. 878.1 deprives juveniles of their Sixth Amendment right to a jury finding, beyond a reasonable doubt, of any fact that exposes them to an enhanced

13

sentence. Defendant, however, failed to develop this argument either in the motion or at the hearing in the trial court. Thus, we find Defendant failed to put the trial court on notice of the *Apprendi* argument and failed to preserve it for appeal.[3]

For the foregoing reasons, this assignment lacks merit.

### ASSIGNMENT OF ERROR NUMBER THREE

In this assignment of error, Defendant alleges that the trial court erred in denying his right to present the testimony of Dr. Daliah Bauer. Defendant claims Dr. Bauer's testimony was critical to his defense and the jury's consideration of his culpability, especially in light of Defendant's admission that he used marijuana laced with embalming fluid on the day of the shooting. Defendant reserved the right to appeal this issue when he entered his *Crosby* plea.

At a hearing held March 9, 2015, the State objected to Defendant's introduction of Dr. Bauer's testimony during the guilt phase of trial. The trial court agreed that there was nothing in the report that would be admissible during the guilt phase of trial:

> Look, on this there's nothing in here that -- this is -- by the way, this is with regard to the report of Daliah Bauer, Ph.D, forensic psychologist, and it's a 16-page report from Dr. Bauer regarding Mr. Doise, Jeffrey -- 17 pages, excuse me -- 18 pages, sorry, 18 pages and, anyway, I don't see anything in here that would be admissible in the guilt phase of a trial as this seems really sentence related -- related to sentencing.

---

[3] We note that, even if the issue had been preserved, the second circuit found the same argument lacking. *See State v. Fletcher*, 149 So.3d 934 (La.App. 2 Cir. 10/1/14), *writ denied*, 14-2205 (La. 6/5/15), 171 So.3d 945, *cert. denied*, 136 S.Ct. 254 (2015). In *Fletcher*, the Attorney General argued that *Apprendi* was not applicable because neither *Miller* nor La.Code Crim.P. art. 878.1 required the trial court to make any factual findings. The second circuit agreed finding *Apprendi* "inapplicable to the instant situation." *Id.* at 943. The court stated:

> *Miller* does not require proof of an additional element of "irretrievable depravity" or "irrevocable corruption." It merely mandates a hearing at which youth-related mitigating factors can be presented to the sentencer and considered in making a determination of whether the life sentence imposed upon a juvenile killer should be with or without parole eligibility.

*Id.*

It goes through his background, his history of, you know, dysfunctional home environments and that type of thing, but I just don't see how any of that relates at all and there's a statement in here about, you know, drug use on the day of this incident. I think marijuana dipped in PCP, I believe, but there's nothing in here that would indicate that there's -- I mean I'm not sure how you would get any of this stuff in, and I guess if you can convince me that there's a basis to admit it into evidence then I'll certainly consider that, Mr. Casanave, but this seems like a classic type of sentencing issue.

Defense counsel responded as follows:

Your Honor, first of all, procedurally the State could've filed a Motion in Limine about this. We have continued this trial because of Dr. Bauer's availability in the past and, you know -- so this was not properly brought up and, secondly, part of my duty is to assert not just the idea of not guilty, but the idea of lesser included offenses and I do believe that this report helps explain certain behaviors of the defendant that led to this event and that could be used to -- by the Court, by the jury, to reach a lesser offense than second-degree murder, and, therefore, I believe that it should be admitted.

The State then responded:

Your Honor, this is a new advance in the law. We now call experts through hearsay of witnesses to give their opinion as to why the conduct appeared as it did. Under no legal defense issue, if we had insanity, which he originally said is the reason this doctor is being called, to address his insanity issue, which it is clearly not, or if we had the intoxication defense, which we're going to see in Dangerfield, they're going to call witnesses in for that, or if we had other legal defenses that you could raise to an expert, that's fine, but just to say I'm going to call an expert in to give the explanation of why this particular defendant did what he did on that date and I'm going to do this through the auspices of a psychologist who interviewed the witnesses who if he called on his own would not be allowed to testify to some of the things that we're hearing today from this report. I would even point out that on page 16 of her report she states, "He does not suffer from extremely severe psychotic disorder, he appears to have some motivation to change his life, and is in general very tolerant and polite toward others," and it goes on and on and on.

The fact that there was -- that we want to bring up drug use on that date through some third party, which we don't even know if it's true or not true, I mean that would be great for defense attorneys. You just hire an expert and have them come in and interview all these people and testify from the stand and there's nobody to cross-examine them because you have an expert coming in to do that. I mean that's absurd. If this expert -- when I first read this report, the first thing I

thought of was, well, she most likely could testify at a -- when we do death penalty cases we have these experts who come in for aggravating and mitigating circumstances and they're allowed to do this kind of thing, testify as to people interviewed, what their conclusions are, in a sentencing situation, but in the guilt phase none of this stuff should come in unless she's here under the not guilty, not guilty by reason of insanity defense, and she certainly is not talking about that because she indicated he's not suffering from any type of mental disease or disorders in her report itself.

So that's why I objected to that in the guilt phase. I don't think I can object to it during the sentencing phase, if we get to that part.

The trial court then issued the following ruling:

Well, let me say this. It's clear to me that -- I mean the reason this case was continued was because of the unavailability of this expert. It was never fully disclosed to me. I took it on defense, you know, claim that this was a -- you know, this was -- because I think the whole -- I had said repeatedly and I think the State took the position also that any experts would go to the sentencing phase, not the guilt phase; that, you know, we had time to deal with the issues that would've necessitated -- previously necessitated a continuance, but I was assured by defense counsel that this wasn't just sentencing issues, this was guilt-phase issues, and I don't see it that way at all. I mean I read through this report. I was looking for something that would be helpful or that would be probative for the guilt - - to the guilt or innocence of the defendant and I don't see anything in here. This is all sentencing phase stuff, and if there had been something in here related to a not guilty by reason of insanity plea where there would've been a -- if this doctor would've opined that Mr. Doise did not know right from wrong at the time of the offense then obviously that would be admissible for that reason, but I just don't see that there's a basis to allow this testimony. I don't think it's admissible based on the content. I don't see how it's -- how it can possibly be admissible during the guilt phase of this trial and because of that I'm going to disallow the testimony or I'm not going to allow the testimony of Dr. Bauer in the guilt phase of this trial.

Defendant objected to the trial court's ruling.

In brief, appellate counsel argues that the trial court's disallowance of Dr. Bauer's testimony at Defendant's guilt phase deprived Defendant of his right to present a defense and deprived the jury of additional facts to consider in making a decision as to Defendant's culpability, as well as making a decision as to whether a

responsive verdict of manslaughter would be appropriate. Appellate counsel further claims that details in Dr. Bauer's report, such as Defendant's use of marijuana dipped in embalming fluid on the day of the shooting, the drug use of Defendant's biological parents, the abuse and neglect suffered by Defendant, and Defendant's low academic skills, would have been helpful to the jury in determining Defendant's culpability.

According to appellate counsel, Defendant's plea of not guilty and not guilty by reason of insanity distinguishes this case from *State v. Bourque*, 93-594 (La.App. 3 Cir. 2/16/94), 636 So.2d 254, *writ denied*, 94-1839 (La. 1/6/95), 648 So.2d 920, wherein Bourque was not allowed to present expert testimony that his mental condition could mitigate the crime from second degree murder to manslaughter. This court upheld the exclusion of such expert testimony because Bourque failed to plead "not guilty and not guilty by reason of insanity" and because the definition of manslaughter requires the "defendant's action be measured by the average person's standard and not the particular psychological variances of a particular defendant." *Id.* at 268. As appellate counsel points out, unlike *Bourque*, the present Defendant did enter a plea of "not guilty and not guilty by reason of insanity."

In brief, appellate counsel notes the court minutes for May 29, 2012, inaccurately state that defense counsel informed the court that Defendant's sanity at the time of the offense was not an issue at that time. In actuality, on that date, Defendant amended his not guilty plea to "not guilty and not guilty by reason of insanity," and defense counsel informed the trial court that there was no issue with Defendant's *competency to proceed* at that time. Because the May 29, 2012 minutes are inaccurate, appellate counsel states that they should be corrected.

17

Since the minutes are inaccurate and appellate counsel requests they be corrected, the district court is ordered to amend the May 29, 2012 minutes to correctly reflect the transcript.

In its brief, the State argues that this court may find Defendant failed to comply with La.Code Evid. art. 103(A)(2) by failing to proffer the substance of Dr. Bauer's testimony. Article 103(A)(2) states that when the trial court excludes evidence, the substance of the evidence must be made known to the court by counsel. We note that Dr. Bauer's report was introduced at the hearing. It is also obvious from the trial court's ruling that it had reviewed Dr. Bauer's report. Thus, we find the issue was preserved for review and, for purposes of reviewing this assignment of error, we will assume the substance of Dr. Bauer's testimony would have been the substance of her report. Even if properly preserved, the State argues that Dr. Bauer's report was proper evidence for sentencing but not for guilt.

The first circuit case of *State v. Dietrich*, 567 So.2d 623 (La.App. 1 Cir.), *writ denied*, 568 So.2d 1079 (La.1990), is helpful in deciding this issue. In *Dietrich*, the defendant sought to introduce evidence of a mental defect called "homosexual anxiety panic syndrome" in his second degree murder trial. *Id.* at 632. At the State's request, the trial court excluded the evidence. *Id.* On appeal, Dietrich argued that he was "entitled to present expert testimony relating to his mental defect because he entered the dual plea of not guilty and not guilty by reason of insanity." *Id*. Upholding the trial court's exclusion of the testimony, the first circuit stated the following:

> The State of Louisiana does not recognize the doctrine of diminished responsibility. Under the statutory definition set forth in LSA-R.S. 14:14, a mental defect short of legal insanity cannot serve to negate specific intent and reduce the degree of the crime.

18

We find no error in the court's ruling excluding evidence of the "homosexual anxiety panic syndrome." Defendant was apparently of the opinion that the evidence was relevant to mitigate a finding of specific intent by proving his panicked state of mind. In light of his own expert's testimony both at the sanity hearing and at trial, it appears that defendant was willing to present expert testimony that he was able to distinguish between right and wrong at the time of the offense; however, because of his state of mind, he believed he was justified in killing the victim because the victim threatened him. Evidence of defendant's mental condition was presented to the jury for use only in its determination of whether or not he was insane at the time of the offense and was not relevant to a determination of whether or not he had the specific intent to kill or inflict great bodily harm. Only legal insanity, that is, the inability to distinguish between right and wrong at the time of the offense, can negate specific intent or reduce the degree of the crime, and the expert witness through whom the testimony was to be presented freely admitted that defendant could distinguish between right and wrong at the time of the offense.

We find, therefore, that the evidence defendant sought to introduce was not relevant to a material issue at trial because it did not relate to defendant's ability to distinguish between right and wrong. Accordingly, we find no error in the court's ruling granting the state's motion *in limine*.

*Id.* at 633 (citations omitted).

Like the expert's proposed testimony in *Dietrich*, the expert's proposed testimony in the present case does not relate to Defendant's ability to distinguish between right and wrong. After a thorough reading of Dr. Bauer's report, we find no mention of any opinion expressed by Dr. Bauer as to whether Defendant knew right from wrong at the time of the offense. Rather, Dr. Bauer's report discussed Defendant's depression, anxiety, general drug use, drug use on the day in question, and prior physical and verbal abuse. Dr. Bauer also reported that Defendant was upset the day of the incident because Kyle (the victim's husband) told Defendant that he would no longer be living with them. Defendant stated that he was angry with Kyle and slightly angry with the victim. One of the people Dr. Bauer interviewed reported that Kyle and Defendant had significant confrontations during

the week of the incident. Although Defendant did not describe the specifics of the incident, Defendant reported that afterward he felt scared and afraid.

Dr. Bauer further reported that Defendant "presented as someone who has engaged in impulsive irresponsible and childish acts, which have created significant problems for him." According to Dr. Bauer, Defendant was experiencing strong regret for the acts which led him to where he "is today." As for his academic ability, Defendant failed the first grade three times and was functioning on a seventh grade level. In 2007, Defendant was diagnosed with Attention Deficit Hyperactivity Disorder (ADHD) and an Adjustment Disorder.

In her conclusion, Dr. Bauer described Defendant's first years as being characterized by significant neglect and exposure to violence, causing the Defendant to lack "stimulation and safe and secure attachments necessary for appropriate development of social relations." Dr. Bauer further observed that as Defendant aged, he was diagnosed with ADHD and "appeared to struggle significantly with impulsivity and distraction." The academic deficits Defendant suffered, Dr. Bauer suggested, could be "accompanied by reduced executive functioning and problem solving abilities." Finally, Dr. Bauer concluded that as a result of his history of early abuse, Defendant "has limited abilities to develop insight in to the dynamics of his relationships and poor abilities to identify effective interpersonal strategies to cope with loss and conflict." Dr. Bauer never opined, however, that any of the foregoing caused Defendant to be unable to distinguish between right and wrong at the time of the offense.

In fact, in her report Dr. Bauer summarized the results of Dr. Anderson's evaluation of Defendant as to Defendant's mental condition at the time of the offense. According to Dr. Bauer, Dr. Anderson opined that Defendant was "not

suffering from any mental disease or defect that rendered him incapable of distinguishing right from wrong with reference to his conduct."[4] Dr. Bauer herself concluded that Defendant did not suffer from "extremely severe psychiatric disorders."

Although Dr. Bauer's report offered relevant information as to Defendant's mental condition at the time of the offense, the report falls short of stating that Defendant was legally insane at the time of the offense. Since Dr. Bauer's report did not relate to Defendant's ability to distinguish between right and wrong at the time of the offense, we find the trial court was correct in finding the report, and any testimony relating to the report, would be admissible at a sentencing hearing but not at trial.

Accordingly, we find this assignment of error lacks merit.

## DECREE

Defendant's conviction and sentence are affirmed. The district court is ordered to amend the May 29, 2012 minutes to correctly reflect the transcript.


**AFFIRMED; REMANDED WITH INSTRUCTIONS.**

---

[4]Dr. Anderson's report was filed into the record and confirms that, in Dr. Anderson's opinion, Defendant was not suffering from a mental disease or defect that rendered him incapable of distinguishing right from wrong at the time of the offense.