MOORE, J.
_JjThe trial court granted the defendant’s pro se motion to correct an illegal sentence in accordance with Miller v. Alabama, 567 U.S. 460, 132 S.Ct. 2455, 183 L.Ed.2d 407 (2012), and set aside the defendant’s life sentence without the benefit of parole, probation or suspension of sentence. Then, in the same proceeding, resentenced the defendant to life imprisonment without the benefit of probation or suspension of sentence. The defendant was not represented by counsel during this proceeding, and he now appeals. For the following reasons, we vacate the sentence imposed and remand to the trial court for further proceedings.
FACTS
On January 22, 2007, the defendant, age 15, went into Goody’s Beauty Supply in Shreveport armed with an RG .22 caliber revolver with intent to commit an armed robbery. While his two juvenile friends remained outside, he attempted to rob the cashier' who was too panicked to comply with his demands. The owner of the store, Ms. Maeung Ram Ellis, emerged from the back of the store. When she began pushing the defendant towards the door, the defendant shot Ms. Ellis in the head point blank. She died as a result of the gunshot wound.
The defendant confessed to police that he had shot Ms. Ellis. He was charged as an adult with second degree murder. Following a jury trial, he was convicted as charged and sentenced to life imprisonment without the benefit of parole, probation or suspension of sentence. He appealed the conviction and sentence, arguing that the evidence was insufficient to sustain his conviction and that his sentence was excessive. We affirmed both the 12conviction and sentence. State v. Kelly, 45,562 (La.App. 2 Cir. 8/11/10), 46 So.3d *578 229, writ denied, 10-2114 (La. 2/11/11), 56 So.3d 1001.
On September 7, 2012, the defendant filed a pro se motion to amend his sentence, citing La. C. Or, P. arts. 881 and 882 and Miller, supra. After the scheduled hearing was passed, the record indicates that on December 20, 2012, the defendant appeared without counsel and the court appointed counsel to represent him. The court minutes of March 25, 2013, indicate that the trial court granted the defendant’s motion to correct illegal sentence, and the state gave oral notice of its intention to file writs. However, the record contains no transcript or documentation indicating that the state filed a writ application with this court.
On April 1, 2013, the defendant, through counsel, filed a memorandum in support of his motion and order to correct illegal sentence, and the state filed an opposition on March 19, 2013.
On June 28, 2013, the defendant filed another pro se motion to correct illegal sentence citing Miller and requesting appointment of counsel. The motion was set for a hearing on November 20, 2013. However, the record does not indicate that a hearing was held on that date.
On September 19, 2014, the defendant filed a motion to stay resolution of his motion to correct illegal sentence pending a U.S. Supreme Court’s decision on whether Miller applies retroactively.
On May 4, 2016, the defendant filed another pro se motion to correct illegal sentence arguing that his sentence was illegal under Miller which, he argued, applied retroactively to his case by Montgomery v. Louisiana, 577 U.S. -, 136 S.Ct. 718, 193 L.Ed.2d 599 (2016). He requested that hejjbe appointed counsel to assist him during resentencing and that he be provided funding for the cost of mitigation experts.
On June 20, 2016, the defendant appeared, without counsel, for a hearing on his motion. The state, without submitting evidence, suggested that the defendant be resentenced to life imprisonment, imposed without the benefit of probation or suspension of sentence, thus permitting parole eligibility. The trial court agreed, set aside the defendant’s original sentence and re-sentenced him to life imprisonment without the benefit of probation or suspension of sentence.
Following his resentencing, the defendant complained that he was entitled to counsel at the sentencing hearing. The trial court denied his request.
The defendant now appeals his newly imposed sentence.
DISCUSSION
By his first assignment of error, the defendant alleges that, contrary to the holding in Miller v. Alabama, 567 U.S. 460, 132 S.Ct. 2455, 183 L.Ed.2d 407 (2012), he was sentenced to serve life in prison at hard labor without a sentencing hearing or consideration of the factors unique to juveniles in general and to him specifically as a 15-year-old offender. The defendant attacks the statutory scheme enacted by this state’s legislature in response to the Supreme Court decision in Miller. He argues that La. C. Cr. P. art. 878.1[1] fails to comply Lwith the require *579 ments of Miller because it merely allows a youthful offender parole eligibility and not the right to parole. He argues that Art. 878.1 practically does nothing to alleviate the problem addressed in Miller because “Louisiana does not often, if ever, release people convicted of homicide on pardon or parole.” Mere access to the Parole Board for consideration of early release does not satisfy Miller, he claims, especially considering the strict parole requirements set forth in La. R.S. 15:774.4, including the requirement that a juvenile homicide defendant must serve at least 35 years of his sentence before he is eligible for parole.
The defendant also complains that the sentencing court failed to comply with Miller because it did not hold a hearing to consider mitigating factors unique to youthful offenders: Citing Garnett v. Wetzel, No. CV 13-3439, slip op., 2016 WL 4379244, (E.D. Pa. Aug. 17, 2016), the defendant notes that the court said that a sentencing court must consider the Miller factors when determining whether or not parole is suitable for an offender who committed homicide as a juvenile.
In opposition, the state contends that, following remand from the U.S. Supreme Court, the Louisiana Supreme Court in State v. Montgomery, 13-1163 (La. 6/28/16), 194 So.3d 606, directed that La. C. Cr. P. art. 878.1 and La. R.S. 15:574.4(E) should be used to conduct re-sentencing hearings to determine whether prisoners who were sentenced prior to Miller should be granted or denied parole eligibility. The state points out that La. C. Cr. P. art. 878.1 does not give a resentenc-ing court the discretion to give a ^defendant entitled to resentencing under Miller any lesser sentence than life with parole eligibility, As such, the state argues that the defendant received the minimum sentence and any deficiencies in the defendant’s hearing should be considered harmless under La. C. Cr. P. art. 921.
In Miller, the United States Supreme Court held that “the Eighth Amendment forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders.” Miller, 132 S.Ct. at 2469. The Miller court relied heavily oh its recent opinions in Roper v. Simmons, 543 U.S. 551, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2005) (invalidating the death penalty for all juvenile offenders under the age of 18), and Graham v. Florida, 560 U.S. 48, 130 S.Ct. 2011, 176 L.Ed.2d 825 (2010) (life without parole sentences for non-homicide juvenile offenders violated the Eight Amendment’s ban on cruel and unusual punishment). Those cases “establish that children are constitutionally different from adults for purposes of sentencing” because “juveniles have diminished culpability and greater prospects for reform” and are thus “less deserving of the most severe punishments.” Graham, 560 U.S. at 68, 130 S.Ct. at 2026. Children have a “lack of maturity and an underdeveloped sense of responsibility,” leading to recklessness, impulsivity, and heedless risk-taking. Roper, 543 U.S. at 569, 125 S.Ct. 1183. They “are more vulnerable ... to negative influences and outside pressures,” including from their family and peers; they have limited “control] over their own environment” and lack the ability to extricate themselves *580 from horrific, crime-producing settings. Ibid. Finally, it said that a child’s character is not as “well formed” as an adult’s; his traits are “less fixed” and his actions less I «likely to be “evidence of irretriev-abl[e] depravfity].” Id., at 570, 125 S.Ct. 1183.
The Miller court thus concluded:
We therefore hold that the Eighth Amendment forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders. Cf. Graham, 560 U.S. at 74, 130 S.Ct. at 2030 (“A State is not required to guarantee eventual freedom,” but must provide “some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation”). By making youth (and all that accompanies it) irrelevant to imposition of that harshest prison sentence, such a scheme poses too great a risk of disproportionate punishment. Because that holding is sufficient to decide these cases, we do not consider Jackson’s and Miller’s alternative argument that the Eighth Amendment requires a categorical bar on life without parole for juveniles, or at least for those 14 and younger. But given all we have said in Roper, Graham, and this decision about children’s diminished culpability and heightened capacity for change, we think appropriate occasions for sentencing juveniles to this harshest possible penalty will be uncommon. That is especially so because of the great difficulty we noted in Roper and Graham of distinguishing at this early age between “the juvenile offender whose crime reflects unfortunate yet transient immaturity, and the rare juvenile offender whose crime reflects irreparable corruption.” Roper, 543 U.S. at 573, 125 S.Ct. 1183; Graham, 560 U.S. at 67-68, 130 S.Ct. at 2026-2027. Although we do not foreclose a sentencer’s ability to make that judgment in homicide cases, we require it to take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison.
Miller, at 2462-2469.
Following Miller, the Louisiana legislature enacted La. C. Cr. P. art. 878.1 and La. R.S. 15:574.4(E).
La. C. Cr. P. art. 878.1 requires a trial court to conduct a hearing prior to imposing a life without parole sentence on a juvenile murder defendant:
A. In any case where an offender is to be sentenced to life imprisonment for a conviction of first degree murder (R.S. 14:30) or second degree murder (R.S. 14:30.1) where the offender was under the age of eighteen years at the time of the commission of the offense, a hearing shall be conducted prior to sentencing to determine whether |7the sentence shall be imposed with or without parole eligibility pursuant to the provisions of R.S. 15:574.4(E).
B. At the hearing, the prosecution and defense shall be allowed to introduce any aggravating and mitigating evidence that is relevant to the charged offense or the character of the offender, including but not limited to the facts and circumstances of the crime, the criminal history of the offender, the offender’s level of family support, social history, and such other factors as the court may deem relevant. Sentences imposed without parole eligibility should normally be reserved for the worst offenders and the worst cases.
If a juvenile murder defendant is granted parole eligibility, the following conditions, set forth in La. R.S. 15:574.4(E), must be met before a defendant is eligible for parole:
*581 E. (1) Notwithstanding any provision of law to the contrary, any person serving a sentence of life imprisonment for a conviction of first degree murder (R.S. 14:30) or second degree murder (R.S. 14:30.1) who was under the age of eighteen years at the time of the commission of the offense shall be eligible for parole consideration pursuant to the provisions of this Subsection if a judicial determination haá been made that the person is entitled to parole eligibility pursuant to Code of Criminal Procedure Article 878.1 and all of the following conditions have been met:
(a) The offender has served thirty-five years of the sentence imposed.
(b) The offender has not committed any major disciplinary offenses in the twelve consecutive months prior to the parole hearing date. A major disciplinary offense is an offense identified as a Schedule B offense by the Department of Public Safety and Corrections in the Disciplinary Rules and Procedures for Adult Offenders.
(c) The offender has completed the mandatory minimum of one hundred hours' of prerelease programming in accordance with R.S. 15:827.1.
(d) The offender has completed substance abuse treatment as applicable.
(e) The offender has obtained a GED certification, unless the offender has previously obtained a high school diploma or is deemed by a certified educator as being incapable of obtaining a GED certification due to a learning disability. If the offender is deemed incapable of Isobtaining a GED certification, the offender shall complete at least one of the following:
(i) A literacy program.
(ii) An adult basic education program.
(iii) A job skills training program.
(f) The offender has obtained a low-risk level designation determined by a validated risk assessment instrument approved by the secretary of the Department of Public Safety and Corrections.
(g) The offender has completed a reentry program to be determined by the Department of Public Safety and Corrections.
(2) For each offender eligible for parole consideration pursuant to the provisions of this Subsection, the board shall meet in a three-member panel, and each member of the panel shall be provided with and shall consider a written evaluation of the offender by a person who has expertise in adolescent brain development and behavior and any other relevant evidence pertaining to the offender.
(3) The panel shall render specific findings of fact in support of its decision.
In Montgomery, 136 S.Ct. at 736, the Supreme Court held that Miller announced a substantive change in the law, and thus states were required to apply its holding retroactively in state collateral proceedings. Noting concerns that retroactive application of Miller would place an undue hardship on states, it said:
Giving Miller retroactive effect, moreover, does not require States to reliti-gate sentences, let alone convictions, in every case where a juvenile offender received mandatory life without parole. A State may remedy a Miller violation by permitting juvenile homicide offenders to be considered for parole, rather than by resentencing them. See, e.g., Wyo. Stat. Ann. § 6-10-301(c) (2013) (juvenile homicide offenders eligible for parole after 25 years). Allowing those offenders to be considered for parole ensures that juveniles whose crimes reflected only transient immaturity—and who have since matured—will not be forced to serve a disproportionate sen *582 tence in violation of the Eighth Amendment. (Emphasis added.)
| Extending parole eligibility to juvenile offenders does not impose an onerous burden on the States, nor does it disturb the finality of state convictions. Those prisoners who have shown an inability to reform will continue to serve life sentences. The opportunity for release will be afforded to those who demonstrate the truth of Miller’s central intuition— that children who commit even heinous crimes are capable of change.
On remand, the Louisiana Supreme Court in Montgomery held that absent new legislation to the contrary, courts should utilize La. C. Cr. P. art. 878.1 and La. R.S. 15:574.4(E) when conducting re-sentencing hearings for juvenile homicide defendants sentenced prior to Miller. State v. Montgomery, 13-1168 (La. 6/28/16), 194 So.3d 606.
Both this court and the Third Circuit Court of Appeal have rejected claims that La. C. Cr. P. art. 878.1 and La. R.S. 15:574.4(E) are unconstitutional in light of the requirements of Miller. In State v. Fletcher, 49,303 (La.App. 2 Cir. 10/1/14), 149 So.3d 934, 942, writ denied, 14-2205 (La. 6/5/15), 171 So.3d 945, cert. denied, — U.S. -, 136 S. Ct. 254, 193 L.Ed. 2d 189 (2015), we found no error in the trial court’s denial of the defense motion to declare the statutes unconstitutional. Miller could have categorically declared that no juvenile murderer shall be imprisoned without benefit of parole, but it specifically refused to do so. In so doing it recognized that the circumstances of some murders and the characters of some juvenile killers warrant imposition of the harshest possible penalty. Hence, following Miller’s directive against mandatory life-without-parole sentences for juvenile killers, our legislature devised a sentencing procedure which would require that a trial court sentencing a youthful offender review all pertinent factors before determining whether parole eligibility was warranted. By its very application to only murderers under the age of 18, | mthe provisions of La. C. Cr. P. art. 878.1 mandating a sentencing hearing where the defense has an opportunity to present mitigating factors—including the defendant’s age as an important part of his social history—satisfy Miller’s requirement that mitigating factors favoring a juvenile killer be heard in a proceeding held for that purpose.[2]
In State v. Dense, 15-713 (La.App. 3 Cir. 2/24/16), 185 So.3d 335, writ denied, 2016-0546 (La. 3/13/17), 185 So. 3d 335, the defendant, a juvenile at the time he murdered his foster mother, pled guilty to second degree murder and was sentenced by agreement of the parties to life imprisonment with parole eligibility after the defendant served 35 years of his sentence. On appeal, the defendant alleged that La. C. Cr. P. art. 878.1 was unconstitutional in light of Miller because Art. 878.1 still provides for an automatic sentence without parole, probation or suspension of sentence, with parole eligibility only occurring after a defendant serves 35 years of his sentence. The defendant further asserted, *583 as in the case sub judice, that because “Louisiana does not often, if ever, release people convicted of homicide on pardon or parole” that mere access to the Parole Board for consideration of parole failed to comply with Miller, The defendant also complained that he should have been granted a sentencing hearing to‘|nconsider the factors set forth in Miller and that the failure to conduct such a hearing was unconstitutional.
The court found no merit to the defendant’s claims. The court noted that in Fletcher, supra, this court upheld the constitutionality of La. C. Gr. P. art. 878.1 and La. R.S. 15:574.4(E). In response to the defendant’s argument that the mere possibility of parole was inadequate to satisfy Miller, the court explained:
The Attorney General also argues that the argument raised by Defendant—the mere possibility of parole is not sufficient to satisfy Miller—has already been rejected in principle by the Louisiana Supreme Court. In State v. Shaffer, 11-1756 (La. 11/23/11), 77 So.3d 939, the supreme court addressed the United States Supreme Court case of Graham v. Florida, 560 U.S. 48, 130 S.Ct. 2011, 176 L.Ed.2d 825 (2010), in which the Supreme Court held that a juvenile who commits a non-homicide offense cannot be sentenced to life without parole. After the Graham decision, Louisiana defendants who had been convicted of aggravated rapes committed when they were under the age of eighteen sought to have their life sentences set aside and to be resentenced. Shaffer, 77 So.3d 939. Rather than remand for resentencing, the Louisiana. Supreme Court simply amended the life sentences to delete the restriction on parole eligibility. Id. The Supreme Court clarified its holding as follows:
We reiterate that this court is not ordering relators released on parole. The determination of whether relators may be released on parole falls within the exclusive purview of the Board of Parole, charged with the duty of ordering parole “only for the best interest of society, not as an award of clemency.” La. R.S. 15:574.4.1(B). Access to the Board’s consideration will satisfy the mandate of Graham.
Id. at 943.[3]
liaWe find that Garnett v. Wetzel, supra, cited by the defendant in support of his claim that the trial court was required to hold a resentencing hearing and consider *584 the factors set forth in Miller, is distinguishable from the instant case and unpersuasive. In Garnett, the defendant filed a federal habeas petition requesting a resen-tencing hearing in light of Montgomery and Miller, and the federal district court remanded the case to state court to conduct a Miller hearing. The federal court also noted that in Pennsylvania, a sentencing judge is required to set both the minimum and maximum sentences to which a defendant may have to serve. However, the sentencing statute in effect at the time the defendant was originally sentenced had been declared unconstitutional, and the legislature had failed to enact a new sentencing statute for juvenile homicide defendants who committed their crimes prior to 2012. Thus, the state faced a dilemma as to how to resentence the defendant and similarly situated offenders. The court also appeared to criticize the decision of some sentencing courts to set a maximum sentence of life imprisonment, but leave to the Parole Board the task of determining whether a defendant should be granted parole pursuant to Miller.
The defendant’s claims that Louisiana’s sentencing scheme for juvenile homicide defendants fails to comply with Miller run counter to the [ 1splain language of Miller. As noted above, the holding of Miller was that sentencing schemes which require mandatory life without parole sentences for juvenile homicide defendants violate the Eighth Amendment’s prohibition against cruel and unusual punishment. The Supreme Court expressly refused to invalidate sentencing schemes which allowed for a life without, parole sentence for juvenile homicide defendants, recognizing that some juvenile homicide defendants, namely, those whose crime demonstrates “irreparable corruption” may well deserve a life without parole sentence. However, the Supreme Court made clear that before imposing such a sentence, a sentencer is “require[d].. .to take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison.” Miller, supra at 2469.
Louisiana promptly and sufficiently addressed Miller (and subsequently, Montgomery) by passing La. C. Cr. P. art. 878.1, which requires courts to consider the Miller factors prior to determining whether or not a juvenile homicide defendant should be eligible for parole. As implicitly approved by the Supreme Court, see Montgomery, supra at 736, Louisiana also enacted La. R.S. 16:574.4(E), which permits a juvenile homicide defendant who has been sentenced to life with parole eligibility, the opportunity to seek parole after serving at least 35 years of his or her sentence, among other requirements. Additionally, as explained in Doise, supra, mere access to the Parole Board for consideration of parole meets the requirements of Miller.
As for the defendant’s argument that the trial court erred by failing to allow him to present mitigating evidence, Miller did not impose such a requirement in eases where parole eligibility was permitted. In Miller, the |i4Supreme Court explained that the Eighth Amendment does not prohibit a court from imposing a sentence of life imprisonment with the opportunity for. parole for a juvenile homicide offender, nor does it require the court to consider the mitigating factors of youth before imposing such a sentence. See Miller, supra, 132 S.Ct. at 2463-69. Instead, a sentencing court’s obligation to consider youth-related mitigating factors is limited to. cases in which the court imposes a sentence of life, or its equivalent, without parole. Id., at 2469. Notwithstanding this fact, La. C. Cr. P. art. 787.1 provides that “the prosecution and defense shall be allowed to introduce *585 any aggravating and mitigating evidence that is relevant to the charged offense or the character of the offender.” Nonetheless, despite the fact the defendant was not given the opportunity to present mitigating evidence per La. C. Cr. P. art. 787.1, he received the minimum sentence available. Accordingly, the error is harmless.
We therefore conclude that this assignment of error lacks merit.
By his second assignment of error, the defendant alleges that the trial court erred in denying him assistance of counsel at sentencing in violation of the United States and Louisiana Constitutions. He maintains that his sentence must be vacated, and he must be resentenced because he was unrepresented by counsel during his resentencing in violation of the Sixth Amendment of the United States Constitution and Article I, § 13 of the Louisiana Constitution.
The state concedes that the defendant was not represented by counsel at his sentencing hearing on June 20, 2016, but should have had the benefit of counsel. However, it maintains that the defendant received the minimum sentence available, and that vacating his sentence and remanding for |,¿resentencing, subjects the defendant to receiving the original, and harsher, sentence of life without parole. The state, citing State v. Dahlem, 14-1655 (La. 3/15/16), 197 So.3d 676, 680, reh’g denied (5/2/16), argues that the absence of counsel at the defendant’s resentencing hearing was not a “complete denial of counsel” so as to amount to a structural error, and, because the defendant received the minimum sentence, he cannot show prejudice.
The Sixth Amendment to the U.S. Constitution provides that “[i]n all criminal prosecutions, the accused shall ... have the Assistance of Counsel for his defense.” Similarly, La. Const, art. I, § 13 states that “[a]t each stage of the proceedings, every person is entitled to assistance of counsel of his choice, or appointed by the court if he is indigent and charged with an offense punishable by imprisonment.” Pursuant to the Sixth Amendment, a defendant has a right to counsel at every critical stage of criminal proceedings, including a resentencing hearing. State v. Joseph, 14-1188 (La.App. 3 Cir. 5/6/15), 164 So.3d 389, 391. Unless a defendant has made a knowing and intelligent waiver of his right to counsel, any sentence imposed in the absence of counsel is invalid and must be vacated. State v. Collinsworth, 452 So.2d 285 (La. App. 2 Cir. 1984) (citing State v. Williams, 374 So.2d 1215 (La. 1979), and State v. White, 325 So.2d 584 (La. 1976)).
The U.S. Supreme Court has stated that the complete denial of counsel (Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963)) and adjudication by a biased judge (Tumey v. Ohio, 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 (1927)) constitute structural defects in a trial which cannot be evaluated as harmless error. Other errors which occur during the | ^course of the trial are considered “trial errors” and are subject to a harmless error analysis. Arizona v. Fulminante, 499 U.S. 279, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991).
There can be no doubt that the resen-tencing of a defendant, especially in a case such as this where a sentencing court is tasked with determining whether or not a juvenile homicide defendant should spend the remainder of his life in prison without any possibility for parole, constitutes a “critical stage of the criminal proceedings.” As such, the defendant should have been represented by counsel. This right is not vitiated by the fact the defendant received the best sentence possible. Such a struc *586 tural error is not subject to harmless exror analysis.
Accordingly, the defendant’s sentence is vacated and the matter remanded to the trial court for resentencing.
By his third assignment of error, the defendant maintains that a life sentence is excessive for this 15-year-old offender, and in his final assignment of error, he contends that he should have been resen-tenced to the lesser responsive verdict of manslaughter because the mandatory sentencing scheme under which he was originally sentenced was found to be unconstitutional in Miller. Because we are vacating the defendant’s sentence and remanding to the trial court for resentencing, these two assignments are pretermitted.
CONCLUSION
For the reasons stated above, the defendant’s sentence is vacated and the matter remanded to the trial court for further proceedings in accordance with this opinion.
SENTENCE VACATED; REMANDED FOR RESENTENCING.

. A. In any case where an offender is to be sentenced to life imprisonment for a conviction of first degree murder (R.S. 14:30) or second degree murder (R.S. 14:30.1) where the offender was under die age of eighteen years at the time of the commission of the offense, a hearing shall be conducted prior to sentencing to determine whether the sentence shall be imposed with or without parole eligi *579 bility pursuant to the provisions of R.S. 15:574.4(E).
B, At the hearing, the prosecution and defense shall be allowed to introduce any aggravating and mitigating evidence that is relevant to the charged offense or the character of the offender, including but not limited to the facts and circumstances of the crime, the criminal history of the offender, the offender’s level of family support, social history, and such other factors as the court may deem relevant. Sentences imposed without parole eligibility should normally be reserved for the worst offenders and the worst cases.

. The court concluded that, contrary to the defendant’s claim, the legislature did not have to amend the second degree murder statute itself for sentencing of juvenile killers. Life without parole is still a constitutionally acceptable sentence for adult killers and it is not a prohibited sentence for all juvenile killers. By adding a new statute pertaining to parole eligibility for juvenile killers which is to be read in conjunction with the first and second degree murder statutes, the legislature provided a statutory solution to the Miller requirements. If the trial court imposes a life sentence with parole eligibility, La. R.S. 15:574.4(E) provides conditions which must be satisfied before the defendant can apply to the parole board for parole consideration. Id.

. The Doise court further stated:
In his brief, the Attorney General argues that he fails to see how life with the possibility of parole is a permissible alternative for juveniles who have committed non-homicide offenses but is not a permissible alternative for juveniles who have committed homicide offenses. We agree. Under Graham, a juvenile who commits a non-homicide offense punishable by life imprisonment must be eligible for parole. Graham, 560 U.S. 48, 130 S.Ct. 2011, 176 L.Ed.2d 825. However, as the Louisiana Supreme Court held in Shaffer, the juvenile may not be released on parole unless the Board of Parole decides to release him. Shaffer, 77 So.3d 939. Thus, in reality, a juvenile who commits a non-homicide offense punishable by life in Louisiana is only promised the possibility of being released on parole. It stands to reason that a juvenile who commits a homicide offense punishable by life imprisonment should be granted no greater relief. As the Attorney General points out, if the mere possibility of being released on parole is sufficient to satisfy the mandatory parole eligibility established in Graham for juvenile non-homicide offenders, the mere possibility of being released on parole is more than sufficient to satisfy the chance of parole eligibility after a hearing established in Miller for juvenile homicide offenders. As the Louisiana Supreme Court held in Shaffer regarding Graham, the mere access to the Board of Parole's consideration satisfies the mandates of Miller. Doise, supra at 342.