# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## KA 17-682

**STATE OF LOUISIANA**

**VERSUS**

**ADAM COMEAUX**

**********

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 213,370
HONORABLE MONIQUE FREEMAN RAULS, DISTRICT JUDGE

**********

**BILLY HOWARD EZELL**
**JUDGE**

**********

Court composed of Billy Howard Ezell, Van H. Kyzar, and Candyce G. Perret, Judges.

**SENTENCES AFFIRMED.**

**Katherine M. Franks**
**Louisiana Appellate Project**
**P. O. Box 1677**
**Slidell, LA 70459-2341**
**(985) 847-1212**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **Adam Comeaux**

**Phillip Terrell, Jr.**
**District Attorney Ninth Judicial District Court**
**P. O. Box 1472**
**Alexandria, La 71309**
**(318) 473-6650**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
    **State of Louisiana**

**Catherine L. Davidson**
**Attorney at Law**
**1921 Jackson Street**
**Alexandria, LA 71301**
**(318) 473-5019**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
    **State of Louisiana**

**Adam Comeaux**
**Cypress -  1**
**Louisiana State Prison**
**Angola, La 70712**

**EZELL, Judge.**

> Adam Comeaux was indicted by the grand jury in separate counts for the first degree murder of Ida Voiselle and Ruby Voiselle Smith in violation of La.R.S. 14:30. After trial by jury, defendant was found guilty as charged on each count. A sentencing hearing was conducted before the same jury that determined the issue of guilt. The jury unanimously recommended that a sentence of death be imposed on defendant for each murder. The trial judge sentenced defendant to death in accordance with the recommendation of the jury.

*State v. Comeaux*, 514 So.2d 84, 86 (La.1987). The supreme court affirmed the Defendant's convictions but vacated his sentences and remanded the matter to the district court for a new penalty hearing. On remand, the Defendant was again sentenced to death on each count. The sentences were subsequently affirmed. *State v. Comeaux*, 93-2729 (La. 7/1/97), 699 So.2d 16, *cert. denied*, 522 U.S. 1150, 118 S.Ct. 1169 (1998).

On November 3, 2003, the trial court granted the Defendant's "Motion to Correct an Illegal and Unconstitutional Death Sentence," which was based on the ground that he was mentally retarded and could not be executed per *Atkins v. Virginia*, 536 U.S. 304, 122 S.Ct. 2242 (2002), and commuted the Defendant's sentences to life at hard labor on each count to run concurrently, without benefit of probation, parole, or suspension of sentence.[1]

On July 1, 2013, the Defendant filed a "Motion to Correct Illegal Sentence and Supporting Memorandum of Law and Facts." Therein, the Defendant alleged his sentences were illegal and unconstitutional under the ruling in *Miller v. Alabama*, 567 U.S. 460, 132 S.Ct. 2455 (2012), which prohibited a sentencing scheme that mandated a life sentence without the possibility of parole for those under the age of eighteen at the time of the commission of a homicide. The district court initially stayed the proceedings until it could be determined whether *Miller*

---

[1]In *Atkins*, 536 U.S. 304, the Supreme Court held the execution of mentally-retarded criminals was cruel and unusual punishment.

applied retroactively. The district court subsequently denied the motion on December 18, 2013, relying on the Louisiana Supreme Court's decision in *State v. Tate*, 12-2763 (La. 11/5/13), 130 So.3d 829, *cert. denied*, __ U.S. __, 134 S.Ct. 2663 (2014), *abrogated by Montgomery v. Louisiana*, __ U.S. __, 136 S.Ct. 718 (2016), which found the decision in *Miller*, 567 U.S. 460, did not apply retroactively.

The Defendant filed another "Motion to Correct Illegal Sentence and Supporting Memorandum of Law and Facts" after September 22, 2015. The district court denied the motion on October 14, 2015, as moot and untimely.

A third "Motion to Correct Illegal Sentence" was filed on April 12, 2016. Therein, the Defendant cited the United States Supreme Court ruling in *Montgomery*, 136 S.Ct. 718, which found the decision in *Miller*, 567 U.S. 460, announced a new, substantive constitutional rule that was retroactive on state collateral review. He sought to be resentenced to the penalty for manslaughter, moved for the appointment of counsel, and asked for investigators and experts to secure evidence required for a hearing. A hearing on the motion was held on March 27, 2017, and the district court sentenced the Defendant to life imprisonment with the possibility of parole.

A "Notice of Appeal" was also filed on April 13, 2017, and granted on April 27, 2017. A "Motion to Reconsider Sentence" was filed on April 13, 2017, and was subsequently denied.

The State filed a "Motion to Correct Sentence Without Hearing" on June 14, 2017. Therein, the State waived a sentencing hearing and stated it would not contest a resentencing of the Defendant to life with eligibility for parole. The district court signed an order granting the motion and sentencing the Defendant to life imprisonment with the benefit of parole.

2

A second "Notice of Appeal" and "Motion to Reconsider Sentence" were filed on July 17, 2017. The trial court issued the following ruling regarding the appeal: "Reviewed. Must file in accordance with law." The trial court subsequently denied the motion to reconsider.

Appellate counsel is now before this court asserting five assignments of error, and the Defendant has raised five pro se assignments of error. For the reasons set forth below, we affirm Defendant's sentences.

## FACTS

The victims, Smith and Voiselle, were sisters. They lived across the street from one another and often spent the night together at Smith's home. In 1985, the Defendant entered Smith's home and beat Smith, who was sixty-three years old, and Voiselle, who was seventy-two years old, with a cypress knee doorstop. Smith and Voiselle suffered multiple traumatic injuries to the head and body, resulting in shock, rapid blood loss, and death. Additionally, Smith exhibited evidence of recent intercourse, ejaculation, and trauma to the genitalia, "probably resulting from the insertion of a flat, blunt instrumentality into the vagina." *Comeaux*, 514 So.2d at 87. The Defendant was seventeen years old and mildly mentally retarded at the time he committed the crimes. *Comeaux*, 699 So.2d at 25.

## ERRORS PATENT

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, we note appellate counsel raises a potential error patent that will be addressed in Assignment of Error Number Five.

## ASSIGNMENTS OF ERROR NUMBERS ONE, TWO, AND THREE

In the first assignment of error, appellate counsel contends the district court violated the Defendant's due process rights under both the United States

Constitution and La.Const. art. 1, § 2 when it imposed a sentence in violation of the United States Supreme Court's mandate to impose a proportionate sentence that offered a meaningful opportunity for release of an offender who committed homicide as a juvenile and had demonstrated that he had rehabilitated himself. In the second assignment of error, appellate counsel contends the Louisiana Supreme Court was without authority to craft penal provisions not authorized legislatively. As a result, the district court failed to perform its duty as sentencer and to assure that a proper and proportionate sentence was imposed at the resentencing, deferring its sentencing authority to the Parole Board and denying the Defendant due process. In the third assignment of error, appellate counsel contends the district court erred in denying the Defendant's "Motion to Amend and/or Modify Sentence Pursuant to La.Code Crim.P. arts. 882 and 872".[2,3] These issues overlap and will be addressed together.

In *Miller*, 567 U.S. at 479, the United States Supreme Court held that "the Eighth Amendment forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders." The Court went on to state:

> [W]e do not consider Jackson's and Miller's alternative argument that the Eighth Amendment requires a categorical bar on life without parole for juveniles, or at least for those 14 and younger. But given all we have said in *Roper* [*v. Simmons*, 543 U.S. 551, 125 S.Ct. 1183 (2005)], *Graham* [*v. Florida*, 560 U.S. 48, 130 S.Ct. 2011 (2010)],

___

[2]We note that the third assignment of error listed on the Assignments of Error page of counsel's brief is not the same as that argued in the brief.

[3]Louisiana Code of Criminal Procedure Article 872 provides:

A valid sentence must rest upon a valid and sufficient:

(1) Statute;

(2) Indictment; and

(3) Verdict, judgment, or plea of guilty.

Louisiana Code of Criminal Procedure Article 882 provides that an illegal sentence may be corrected at any time.

and this decision about children's diminished culpability and heightened capacity for change, we think appropriate occasions for sentencing juveniles to this harshest possible penalty will be uncommon. That is especially so because of the great difficulty we noted in *Roper* and *Graham* of distinguishing at this early age between "the juvenile offender whose crime reflects unfortunate yet transient immaturity, and the rare juvenile offender whose crime reflects irreparable corruption." *Roper*, 543 U.S., at 573, 125 S.Ct. 1183; *Graham*, 560 U.S., at 68, 130 S.Ct., at 2026–2027. Although we do not foreclose a sentencer's ability to make that judgment in homicide cases, we require it to take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison.

*Id.* at 479-80 (footnote omitted).

In *Montgomery*, 136 S.Ct. at 736 (emphasis added), the United States Supreme Court stated:

> The Court now holds that *Miller* [*v. Alabama*, 567 U.S. 460, 132 S.Ct. 2455 (2012),] announced a substantive rule of constitutional law. . . . *Miller*'s conclusion that the sentence of life without parole is disproportionate for the vast majority of juvenile offenders raises a grave risk that many are being held in violation of the Constitution.
>
> Giving *Miller* retroactive effect, moreover, does not require States to relitigate sentences, let alone convictions, in every case where a juvenile offender received mandatory life without parole. **A State may remedy a *Miller* violation by permitting juvenile homicide offenders to be considered for parole, rather than by resentencing them.** See, *e.g.*, Wyo. Stat. Ann. § 6–10–301(c) (2013) (juvenile homicide offenders eligible for parole after 25 years). Allowing those offenders to be considered for parole ensures that juveniles whose crimes reflected only transient immaturity—and who have since matured—will not be forced to serve a disproportionate sentence in violation of the Eighth Amendment.
>
> Extending parole eligibility to juvenile offenders does not impose an onerous burden on the States, nor does it disturb the finality of state convictions. Those prisoners who have shown an inability to reform will continue to serve life sentences. The opportunity for release will be afforded to those who demonstrate the truth of *Miller*'s central intuition—that children who commit even heinous crimes are capable of change.

*Montgomery* was remanded to the Louisiana Supreme Court for further proceedings. In *State v. Montgomery*, 13-1163, pp. 2-5 (La. 6/28/16), 194 So.3d

606, 607-09 (emphasis added) (first alteration in original), the Louisiana Supreme

Court held:

> To implement *Miller*'s "meaningful opportunity to obtain release" for those juveniles who commit murder but are not found to be irreparably corrupt, the Legislature in 2013 La. Acts 239 enacted La.C.Cr.P. art. 878.1 and La.R.S. 15:574.4(E). Article 878.1 requires the District Court to conduct a hearing "[i]n any case where an offender is to be sentenced to life imprisonment for a conviction of first degree murder (R.S. 14:30) or second degree murder (R.S. 14:30.1) where the offender was under the age of eighteen years at the time of the commission of the offense . . . to determine whether the sentence shall be imposed with or without parole eligibility pursuant to the provisions of R.S. 15:574.4(E)." La.R.S. 15:574.4(E) then provides the conditions under which any person serving a sentence of life imprisonment for first or second degree murder committed under the age of 18 can become parole eligible, provided a judicial determination has been made the person is entitled to parole eligibility pursuant to Article 878.1. **This court found in *State v. Tate*, 12–2763, pp. 19–20 (La.11/5/13), 130 So.3d 829, 843, that Article 878.1 applies prospectively to those offenders who are to be sentenced**.
>
> During the 2016 legislative session, legislation was proposed to address those cases in which persons that committed murder as juveniles and were sentenced to life imprisonment without parole eligibility before *Miller* [*v. Alabama*, 567 U.S. 460, 132 S.Ct. 2455 (2012),] was decided, who the Supreme Court determined in *Montgomery* [*v. Louisiana*, __ U.S. __, 136 S.Ct. 718 (2016),] must be resentenced in accordance with the principles enunciated in *Miller*. However, the Legislature ultimately failed to take further action in the last few moments of the legislative session regarding sentences of life without parole for juvenile homicide offenders. *See* HB 264 of the 2016 Regular Session. Therefore, **in the absence of further legislative action, the previously enacted provisions should be used for the resentencing hearings that must now be conducted on remand from the United States Supreme Court to determine whether** Henry Montgomery, and other **prisoners** like him, **will be granted or denied parole eligibility**.
>
> Certainly, the legislature is free within constitutional contours to enact further laws governing these resentencing hearings but **in the absence of such legislation, this court must provide guidance to the lower courts on the pending cases**. . . . **In providing this guidance, we note that existing legislative enactments are applicable, either directly or by analogy**.
>
> In La.C.Cr.P. art. 878.1(B), the Legislature addressed the factors to be considered to determine whether the sentence should be imposed with or without parole eligibility:

> At the hearing, the prosecution and defense shall be allowed to introduce any aggravating and mitigating evidence that is relevant to the charged offense or the character of the offender, including but not limited to the facts and circumstances of the crime, the criminal history of the offender, the offender's level of family support, social history, and such other factors as the court may deem relevant. Sentences imposed without parole eligibility should normally be reserved for the worst offenders and the worst cases.

This provision does not purport to provide an exhaustive list of considerations but instead authorizes the District Court to consider other factors the court may deem relevant to its determination. Previously, and by way of example, in *State v. Williams*, 01–1650 (La.11/1/02), 831 So.2d 835, this Court noted that the United States Supreme Court left to the states the task of developing appropriate ways to enforce the constitutional restriction against execution of the intellectually disabled and further noted that Louisiana had not yet directly legislatively implemented *Atkins v. Virginia*, 536 U.S. 304, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002). Absent a legislative implementation of *Atkins*, the *Williams* court drew upon other enactments to establish a procedure until the legislature could act. Similarly, although the Legislature was unable to enact legislation during the 2016 Regular Session, it has provided general sentencing guidelines in La.C.Cr.P. art. 894.1, which the District Court may deem relevant in accordance with La.C.Cr.P. art. 878.1(B). Other states have also legislatively implemented *Miller*. For example, Florida has enumerated the following factors to be considered in sentencing a juvenile to life imprisonment:

> (a) The nature and circumstances of the offense committed by the defendant.
> (b) The effect of the crime on the victim's family and on the community.
> (c) The defendant's age, maturity, intellectual capacity, and mental and emotional health at the time of the offense.
> (d) The defendant's background, including his or her family, home, and community environment.
> (e) The effect, if any, of immaturity, impetuosity, or failure to appreciate risks and consequences on the defendant's participation in the offense.
> (f) The extent of the defendant's participation in the offense.
> (g) The effect, if any, of familial pressure or peer pressure on the defendant's actions.
> (h) The nature and extent of the defendant's prior criminal history.
> (i) The effect, if any, of characteristics attributable to the defendant's youth on the defendant's judgment.

(j) The possibility of rehabilitating the defendant.

> Fla. Stat. § 921.1401(2) (2014). The District Court here may deem considerations such as these to be relevant as well under the authority of Article 878.1(B). Finally, the District Court must also be mindful of the Supreme Court's directive in *Miller*, 132 S.Ct. at 2469, "to take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison." In making its ultimate determination regarding parole eligibility, the District Court is further directed to issue reasons indicating the factors it considered to aid in appellate review of the sentence imposed after resentencing.

Appellate counsel argues the Louisiana Legislature has consistently failed to enact penalty statutes that satisfy the directives in *Miller*, 567 U.S. 460. Counsel points out there has been no amendment to the first and second degree murder statutes. Louisiana Revised Statutes 14:30 provides for a sentence of death or life imprisonment without the possibility of parole while La.R.S. 14:30.1 mandates a life sentence without the possibility of parole, and neither statue references the age of the offender. Counsel contends that because La.R.S. 14:30 has not been amended, there is no statute under which a valid sentence for first degree murder committed by a juvenile can be imposed.

Instead of amending the sentencing provisions of La.R.S. 14:30 and La.R.S. 14:30.1, the Louisiana Legislature enacted La.R.S. 15:574.4(E) and La.Code Crim.P. art. 878.1 in 2013, the year after the *Miller* decision. Counsel notes that La.R.S. 15:574(E) was amended in 2017 to reduce the time a defendant is required to serve before becoming eligible for parole from thirty-five to twenty-five years. Counsel contends that the addition of parole eligibility and access to the Parole Board after twenty-five years is not the equivalent of a meaningful opportunity for release from incarceration and does not satisfy *Miller*. Further, counsel claims the Louisiana Supreme Court has deprived juveniles of the proportionality review mandated in *Miller* by delegating the "sentencing choice" to the Parole Board.

8

Counsel argues that the Louisiana Supreme Court created substantive law when it set forth possible penalties which were not and still have not been authorized by the legislature. Additionally, the district court did not hold a sentencing hearing with full consideration of mitigating evidence. However, counsel admits the sentence imposed was within the parameters established in *Montgomery*, 194 So.3d 606.

Counsel claims the Louisiana Supreme Court in *Montgomery* said the only issue to be resolved in a *Miller* hearing was whether the inmate would be granted or denied parole eligibility, which she alleges is a finding the United States Supreme Court did not make in *Miller*, 567 U.S. 460. She avers the Louisiana Supreme Court lacks authority to create a sentencing scheme, and the legislature's power to set the possible sentencing choice cannot be delegated even when it fails to act.

In support of the argument that the Louisiana Supreme Court may not establish interim rules and did not have authority to mandate a limited set of sentencing possibilities for a district court at a *Miller/Montgomery* hearing, appellate counsel cites *State v. Rome*, 96-991 (La. 7/1/97), 696 So.2d 976. Therein, the Louisiana Supreme Court stated:

> One of the traditional, inherent and exclusive powers of the judiciary is the power to sentence. *State v. LeCompte*, 406 So.2d 1300, 1311 (La.1981) (on rehearing). After a defendant is convicted of a crime, the determination of his sentence is within the sound discretion of the trial judge. *State v. Jackson*, 298 So.2d 777, 780 (La.1974). However, the trial judge's sentencing discretion is not unbridled, as the legislative branch of government is free to decide what constitutes a crime as well as "what punishments shall be meted out by a court after the judicial ascertainment of guilt." *State v. Normand*, 285 So.2d 210, 211 (La.1973). Therefore, the fixing of penalties is purely a legislative function, but the trial judge has the discretion to determine the appropriate sentence within the sentencing range fixed by the legislature.

9

*Id.* at 978 (footnotes omitted). Appellate counsel then notes that La.R.S. 15:321(A) provides:

> The enactment of statutes defining criminal offenses and the establishment of ranges of penalties for those offenses is a matter of substantive law solely within the prerogative of the legislature. The determination and imposition of sentence in particular cases is generally the function of the sentencing court, subject to appellate review and to mandatory sentences provided by law.

Further, La.Const. art. 2, § 2 specifies the judicial branch is prohibited from exercising the power assigned to the legislative branch. Counsel contends that the legislature's failure to act resulted in a violation of the Defendant's due process rights. Thus, any interim rules created by the Louisiana Supreme Court are unenforceable because they were created without authority.

Because the district court relied on the Louisiana Supreme Court's improperly drafted rule, counsel submits the Defendant's sentence is illegal "as still imposed pursuant to a statute . . . whose penal provision has been declared unconstitutional." Appellate counsel claims that inasmuch as the Louisiana Supreme Court was without authority to create sentencing alternatives, the trial court was not bound by them. It had other sentencing possibilities available, including resentencing the Defendant to the maximum sentence for the responsive verdict of manslaughter or a downward departure from the life sentence in accordance with *State v. Dorthey*, 623 So.2d 1276 (La.1993). Counsel asserts the appropriate action would have been to follow the decision in *State v. Craig*, 340 So.2d 191 (La.1976). In *Craig*, the defendant had been convicted of aggravated rape, which carried a mandatory sentence of death. The Louisiana Supreme Court held that since the mandatory death penalty for first degree murder had been found unconstitutional in *Roberts v. Louisiana*, 428 U.S. 325, 96 S.Ct. 3001 (1976), the mandatory death penalty for aggravated rape was likewise unconstitutional. At the

time the rape was committed, the legislature had abrogated the responsive verdict of guilty without capital punishment. Therefore, the appropriate remedy to correct the defendant's illegal sentence was to remand for resentencing to the most serious penalty for the next lesser responsive verdict, simple rape. Counsel acknowledges that an argument similar to hers was rejected by the Louisiana Supreme Court in *State v. Shaffer*, 11-1756 (La. 11/23/11), 77 So.3d 939. However, she proclaims the supreme court did not expressly overrule *Craig*, 340 So.2d 191, in *Shaffer*, 77 So.3d 939.

In *Shaffer*, 77 So.3d 939, the Louisiana Supreme Court addressed the claims of three relators, all juvenile offenders who had been convicted of aggravated rape and given life sentences, who asserted that their sentences violated the pronouncement in *Graham v. Florida*, 560 U.S. 48, 130 S.Ct. 2011 (2010), that the Eighth Amendment precluded sentencing a juvenile to life imprisonment without the possibility of parole for commission of a non-homicide offense. One defendant had been sentenced to life imprisonment with an express restriction against parole eligibility. The two others had received life sentences without express restrictions on parole eligibility. Relators argued that the appropriate remedy in light of the *Graham* decision was to resentence them in accordance with the penalty provision for the next lesser and included responsive verdict of attempted aggravated rape. The *Shaffer* court recognized that *Graham* required neither the immediate release of relators nor a remedy that would guarantee their immediate release based on credit for time served. Rather, *Graham* required only that the state provide a "meaningful opportunity" for relators and other similarly situated persons to obtain release as part of the rehabilitative process. *Shaffer*, 77 So.3d at 942. The *Shaffer* court found that under *Graham*, 560 U.S. 48, the Eighth Amendment prohibited the state from enforcing against relators and other similarly situated persons the

11

commutation provisions of La.R.S. 15:574.4(A)(2) and La.R.S. 15:574.4(B), both of which required commutation of a life sentence to a fixed term before parole consideration. The *Shaffer* court went on to reject the suggestion that the proper remedy was resentencing under a lesser and included offense and held the appropriate remedy was to delete the restrictions on parole eligibility. The supreme court noted in footnote six of its opinion:

> This Court is aware that in the past session, the legislature addressed, but did not resolve, the *Graham* issue. 2011 House Bill 115 provided that an inmate serving life sentences for a nonhomicide crime committed as a juvenile would become eligible for parole consideration after serving 35 years of his sentence, subject to a variety of special conditions. However, House Bill 115 failed final passage and the legislature has by concurrent resolution directed the Louisiana Law Institute to convene a task force to evaluate Louisiana law for compliance with *Graham* and to report back with its findings and recommendations by January 1, 2012. Thus, our decision in relators' cases is an interim measure (based on the legislature's own criteria) pending the legislature's response to *Graham. Cf. State v. Williams*, 01–1650, pp. 32–33 (La.11/1/02), 831 So.2d 835, 861 (adopting as an interim measure procedures for determining whether a capital defendant is mentally retarded and so exempt from capital punishment under *Atkins v. Virginia*, 536 U.S. 304, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002), pending the legislature's own response to the *Atkins* decision, *see* La.C.Cr.P. art. 905.5.1, 2003 La. Acts 698).

*Shaffer*, 77 So.3d. at 943 n.6.

Appellate counsel further notes the same issue was rejected in *State v. Graham*, 14-1769 (La.App. 1 Cir. 4/24/15), 171 So.3d 272, *writ denied*, 15-1028 (La. 4/8/16), 191 So.3d 583, and *State v. Brown*, 51,418 (La.App. 2 Cir. 6/21/17), __ So.3d __. However, the issue at hand has not been addressed by this court. In *Graham*, 171 So.3d 272, the defendant was convicted of second degree murder and sentenced to life imprisonment without the benefit of parole. While the case was pending in the Louisiana Supreme Court, the decision in *Miller*, 567 U.S. 460, was rendered. The supreme court remanded the matter to the district court to conduct a sentencing hearing in accord with the principles enunciated in *Miller*. On remand,

the defendant was resentenced to life imprisonment at hard labor with the benefit of parole. On appeal, the first circuit rejected the defendant's claim that he should have been resentenced to the penalty for the next available responsive verdict of manslaughter, noting the only other sentence available to the defendant under *Miller* was life imprisonment with parole. *Graham*, 171 So.3d at 281. In *Brown*, __ So.3d at __, the second circuit stated:

> [O]ur circuit courts have repeatedly rejected the claim that, in light of *Miller*, juvenile homicide defendants should be sentenced under the manslaughter statute. *State v. Williams*, 50,060 (La. App. 2 Cir. 9/30/15), 178 So.3d 1069, *writ denied*, 2015-2048 (La. 11/15/16), 209 So.3d 790; *State v. Calhoun*, [51,337 (La.App. 2 Cir. 5/17/17), 222 So.3d 903]; *State v. Plater*, [51,338 (La.App. 2 Cir. 5/17/17), 222 So.3d 897]; *State v. Graham*, 2014-1769 (La.App. 1 Cir. 4/24/15), 171 So.3d 272, *writ denied*, 2015-1028 (La. 4/8/16), 191 So.3d 583; *State v. Dupre*, 2016-1352 (La.App. 1st Cir. 4/12/17), 2017 WL 1376526; *State v. Williams*, 2015-0866 (La. App. 4 Cir. 1/20/16), 186 So.3d 242, *writ denied*, 2016-0332 (La. 3/31/17), 217 So.3d 358; *State v. Jones*, 2015-157 (La. App. 5 Cir. 9/23/15), 176 So.3d 713.

Counsel asks that the Defendant be resentenced to twenty-one years at hard labor, the maximum sentence for manslaughter at the time the offenses were committed.

The State points out that appellate counsel admits the sentences imposed on March 27, 2017, were within the parameters set out in *Montgomery*, 194 So.3d 606, but fails to address the litany of cases that have denied the very relief sought by counsel. The State cites *State v. Williams*, 15-866, pp. 15-16 (La.App. 4 Cir. 1/20/16), 186 So.3d 242, 251-52, *writ denied*, 16-332 (La. 3/31/17), 217 So.3d 358 (first, third, and fourth alterations in original), as follows:

> The defendant herein contends that the trial court erred in relying on La. C.Cr.P. art. 878.1 and La. R.S. 15:574.4(E) in sentencing him. The effective date of these provisions was August 1, 2013. The defendant committed the instant offense of second degree murder in 2006. According to the defendant, in finding that La. C.Cr.P. art. 878.1 applied to this matter and then sentencing him pursuant to La. R.S. 15:574.4(E), the trial court violated the prohibition against *ex post facto* laws.

In *State v. Graham*, 2014–1769, p. 8 (La.App. 1 Cir. 4/24/15), 171 So.3d 272, 278, the First Circuit considered the same issue, and concluded:

> . . . any consideration of La. C.Cr.P. art. 878.1 and La. R.S. 15:574.4(E) in resentencing the defendant, would not have been, contrary to the defendant's assertion, an ex post facto violation. In *State v. Jones*, 12–788 (La.App. 5 Cir. 5/23/13), 165 So.3d 74 (unpublished), *writ granted*, 13–2039 (La.2/28/14), 134 So.3d 1164, a decision handed down after *Miller* but prior to *State v. Tate*, 12–2763 (La.11/5/13), 130 So.3d 829, 841–44, *cert. denied*, —— U.S. ——, 134 S.Ct. 2663, 189 L.Ed.2d 214 (2014) (applying La. C.Cr.P. art. 878.1 and La. R.S. 15:574.4(E)(1) prospectively only), the defendant (seventeen years old at the time of the offense) was convicted of second degree murder and sentenced to life imprisonment at hard labor without benefit of probation, parole, or suspension of sentence. The defendant committed the crime on April 29, 2010, before either *Miller* or *Tate* were handed down. The fifth circuit affirmed the conviction, but vacated that portion of the defendant's sentence that prohibited parole eligibility and remanded the matter for resentencing in conformity with *Miller*. In *State v. Jones*, in a writ of certiorari grant[ed] for the above unpublished decision, our supreme court stated:
>
> > Defendant is entitled to the benefit of the decision in *Miller v. Alabama*, 567 U.S. [460], 132 S.Ct. 2455, 183 L.Ed.2d 407 (2012), because his case was in the direct review pipeline when *Miller* was decided. *See Griffith v. Kentucky*, 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987) (new rules of constitutional criminal procedure apply retroactively to all cases pending on direct review or in the direct review pipeline); compare *State v. Tate*, 12–27[6]3 (La.11/5/13) [130 So.3d 829] (*Miller* not retroactive to final sentences subject only to collateral attack). . . . On remand of the case, the trial court is directed to hold a hearing in compliance with La. C.Cr.P. art. 878.1, implementing the *Miller* decision in Louisiana, before resentencing defendant to a term of life imprisonment at hard labor that, in the court's discretion, after considering any aggravating and mitigating evidence relevant to the offense or the character of defendant, may, or may not, be

14

> subject to parole eligibility pursuant to the provisions of La. R.S. 15:574.4(E).

2013–2039 (La.2/28/14), 134 So.3d 1164 (per curiam).

According to the foregoing, there is no ex post facto violation in this case. The defendant herein was convicted in 2012 and sentenced in 2014.

The State further notes that counsel's argument that the appropriate remedy was to sentence the Defendant to the maximum sentence for manslaughter was also rejected in *Williams*.

The defendant also argues that because the statutory sentence of life imprisonment for second degree murder is unconstitutionally excessive as applied to offenders under the age of eighteen, he should be sentenced under the law in effect in 2006, when this murder was committed, to the highest possible sentence for the next lesser offense—manslaughter. The sentence imposed for a manslaughter conviction in 2006 was forty years at hard labor.

The court in *State v. Fletcher*, 49,303, pp. 12–13 (La.App. 2 Cir. 10/1/14), 149 So.3d 934, 942, found no merit to a similar argument:

> The Louisiana legislature promptly addressed the *Miller* directive against mandatory life-without-parole sentences for juvenile killers by devising a sentencing procedure which would require that a trial court sentencing a youthful offender review all pertinent factors before determining whether parole eligibility was warranted. By its very application to only murderers under the age of 18, the provisions of La. C. Cr. P. art. 878.1 mandating a sentencing hearing at which the defense will be given an opportunity to present mitigating factors—which obviously include the defendant's age as an important part of his social history—satisfy *Miller's* requirement that mitigating factors favoring a juvenile killer be heard in a proceeding held for that purpose. . .
>
> . . . life without parole is still a constitutionally acceptable sentence for adult killers and it is not a prohibited sentence for *all* juvenile killers. Our legislature carefully designed an adequate solution by adding a new statute pertaining to parole eligibility for juvenile killers which is to be read in conjunction with the first and second degree murder statutes. In the event that the trial court imposes a life sentence with parole eligibility, La. R.S. 15:574.4(E) provides conditions

15

which must be satisfied before the defendant can apply to the parole board for parole consideration. (Emphasis supplied).

Either sentencing scheme of life imprisonment with parole, or life imprisonment without parole, is proper and not unconstitutional under *Miller v. Alabama*, *supra*. Accordingly, we find the defendant was not entitled to be sentenced to the next available responsive verdict of manslaughter. *See*, *State v. Graham*, 2014–1769 (La.App. 1 Cir. 4/24/15), 171 So.3d 272.

*Id.* at 252-53.

The State asserts the request for a downward departure in sentence was rejected by this court in *State v. Doise*, 15-713 (La.App. 3 Cir. 2/24/16), 185 So.3d 335, *writ denied*, 16-546 (La. 3/13/17), 216 So.3d 808. The State cites the following from *Doise*:

The Attorney General also argues that the argument raised by Defendant—the mere possibility of parole is not sufficient to satisfy *Miller*—has already been rejected in principle by the Louisiana Supreme Court. In *State v. Shaffer*, 11–1756 (La.11/23/11), 77 So.3d 939, the supreme court addressed the United States Supreme Court case of *Graham v. Florida*, 560 U.S. 48, 130 S.Ct. 2011, 176 L.Ed.2d 825 (2010), in which the Supreme Court held that a juvenile who commits a *non-homicide* offense cannot be sentenced to life without parole. After the *Graham* decision, Louisiana defendants who had been convicted of aggravated rapes committed when they were under the age of eighteen sought to have their life sentences set aside and to be resentenced. *Shaffer*, 77 So.3d 939. Rather than remand for resentencing, the Louisiana Supreme Court simply amended the life sentences to delete the restriction on parole eligibility. *Id.* The supreme court clarified its holding as follows:

We reiterate that this Court is not ordering relators released on parole. The determination of whether relators may be released on parole falls within the exclusive purview of the Board of Parole, charged with the duty of ordering parole "only for the best interest of society, not as an award of clemency." La. R.S. 15:574.4.1(B). Access to the Board's consideration will satisfy the mandate of *Graham*.

*Id.* at 943.

In his brief, the Attorney General argues that he fails to see how life with the possibility of parole is a permissible alternative for juveniles who have committed *non-homicide* offenses but is not a

permissible alternative for juveniles who have committed *homicide* offenses. We agree. Under *Graham*, a juvenile who commits a non-homicide offense punishable by life imprisonment *must* be *eligible* for parole. *Graham*, 560 U.S. 48, 130 S.Ct. 2011. However, as the Louisiana Supreme Court held in *Shaffer*, the juvenile may not be *released* on parole unless the Board of Parole decides to release him. *Shaffer*, 77 So.3d 939. Thus, in reality, a juvenile who commits a non-homicide offense punishable by life in Louisiana is only promised the possibility of being released on parole. It stands to reason that a juvenile who commits a *homicide* offense punishable by life imprisonment should be granted no greater relief. As the Attorney General points out, if the mere possibility of being released on parole is sufficient to satisfy the mandatory parole eligibility established in *Graham* for juvenile non-homicide offenders, the mere possibility of being released on parole is more than sufficient to satisfy the chance of parole eligibility after a hearing established in *Miller* for juvenile homicide offenders. As the Louisiana Supreme Court held in *Shaffer* regarding *Graham*, the mere access to the Board of Parole's consideration satisfies the mandates of *Miller*.

For the foregoing reasons, Defendant fails to prove that the statutory scheme implemented by the Louisiana Legislature in response to *Miller* is unconstitutional. Accordingly, this assignment lacks merit.

*Id.* at 342-43. The State asserts that *Shaffer*, 77 So.3d 939, also rejected the arguments made by counsel.

The State quotes *Montgomery*, 194 So.3d 606, and avers the Louisiana Supreme Court offered procedures for trial courts to employ in order to comply with *Miller*, 567 U.S. 460. The State claims that counsel's request that this court find the Louisiana Supreme Court established substantive law in *Montgomery*, 194 So.3d 606, is unfounded.

The State further notes that La.Code Crim.P. art. 878.1 was amended by 2017 La. Acts No. 277, § 2, and that amendment directly applies to the Defendant. The State asserts that as of August 1, 2017, the "separation-of-powers 'issue has been deprived of practical significance, made abstract [and] purely academic... [and] a rendered judgment can serve no useful purpose or give relief or effect.' *La. Fed'n of Teachers v. State*, 2014-0691 (La. 10/15/14), 171 So.3d 835, 844."

ANALYSIS

Prior to the decisions in *Montgomery*, 136 S.Ct. 718, and *Montgomery*, 194 So.3d 606, the Louisiana Legislature enacted La.Code Crim.P. art. 878.1 and La.R.S. 15:574.4(E). In *Tate*, 130 So.3d at 844 n.5 (emphasis added), the Louisiana Supreme Court found these provisions did not apply retroactively and, in footnote five of the decision, it discussed the legislature's intent when enacting these provisions in 2013:

> Evidence of legislative intent further supports our interpretation. In the House Committee on Criminal Justice, Pete Adams, Executive Director of the Louisiana District Attorneys Association, and Dana Kaplan, Executive Direct of the Juvenile Justice Project of Louisiana, testified the bill was a carefully negotiated compromise and, as part of that compromise, the bill was written to apply prospectively only, **leaving the question of *Miller's* retroactivity to the courts**. Thus, Pete Adams testified: "One of the issues that is not addressed in the bill that we're concerned about is retroactivity. We agreed not to address this in the bill. We believe that the statute on its face is prospective only but of course the courts will make that decision whether they are constitutionally required to be applied retroactively. **If the courts decide that the law should be applied retroactively, that is for those already in jail, then this statute will be the vehicle by which those already in jail would gain access.** I would just kind of conclude there." Dana Kaplan concurred: "We also concur with the decision to not have the legislation comment on retroactivity because that's a matter that the courts themselves will decide." These comments were then endorsed by the bill's primary author, Representative Chris Hazel.

In *State v. Fletcher*, 49,303 (La.App. 2 Cir. 10/1/14), 149 So.3d 934, *writ denied*, 14-2205 (La. 6/5/15), 171 So.3d 945, *cert. denied*, __ U.S. __, 136 S.Ct. 254 (2015), the second circuit found that the Louisiana Legislature designed an adequate solution to *Miller*, 567 U.S. 460, by enacting La.Code Crim.P. art. 878.1, which applied only to murderers under the age of eighteen and was to be read in conjunction with the first and second degree murder statutes. The *Fletcher* court cited *State v. Baker*, 14-222 (La.App. 1 Cir. 9/19/14), 154 So.3d 561, *writ denied*, 14-2132 (La. 5/15/15), 170 So.3d 159, wherein the first circuit rejected the

defendant's argument that the trial court should have quashed the indictment on the basis that *Miller*, 567 U.S. 460, invalidated the mandatory penalty provision of La.R.S. 14:30.1, thereby prohibiting him from being sentenced as an adult in district court to life without parole.

Further, in *State v. Harper*, 51,539, p. 4 (La.App. 2 Cir. 8/9/17), __ So.3d __, __ the second circuit stated:

> [T]he judiciary did not usurp legislative power in creating a "sentencing range" for juvenile homicide offenders. The defendant received the mandatory minimum sentence available under *Miller*, La. R.S. 14:31, and La. C. Cr. P. art. 878.1. As this Court noted in *Fletcher*, supra, the legislature was not required to amend the murder statutes to provide for sentencing of juvenile homicide defendants. Further, the legislature designed an adequate solution to *Miller* by creating statutes relating to parole eligibility for juvenile homicide defendants, which are to be read in conjunction with the murder statutes.

*See also State v. Keith*, 51,389 (La.App. 2 Cir. 6/21/17), 223 So.3d 767; *State v. Calhoun*, 51,337 (La.App. 2 Cir. 5/17/17), 222 So.3d 903; *State v. Shaw*, 51,325 (La.App. 2 Cir. 5/17/17), 223 So.3d 607.

To date, the Louisiana Legislature has not amended La.R.S. 14:30. However, the United States Supreme Court did not categorically declare that no juvenile homicide offender could be sentenced to life without benefit of parole. Thus, life without parole is still a constitutionally acceptable sentence for juveniles convicted of first degree murder. Consequently, the Defendant was sentenced under a valid statute.

In *Montgomery*, 136 S.Ct. at 736, the United States Supreme Court stated: "A State may remedy a *Miller* violation by permitting juvenile homicide offenders to be considered for parole, rather than by resentencing them." In his concurrence in *Montgomery*, 194 So.3d 606, 610, Justice Crichton wrote: *"Eligibility vel non* is the sole question to be answered in a *Miller* hearing. If parole eligibility is not

19

denied by the district court, future prospects for parole will depend on the prerequisites of La. R.S. 15:574.4(E) and on the ultimate determinations of the Parole Board."

This court has found the Louisiana Legislature's enactment of La.Code Crim.P. art. 878.1 and La.R.S. 15:574.4(E) satisfied *Miller*. *Doise*, 185 So.3d 335. Additionally, in *Tate*, 130 So.3d 829, the supreme court noted the legislature's intent to leave it up to the courts to determine whether those newly enacted laws applied retroactively. In *Montgomery*, 194 So.3d 606, the Louisiana Supreme Court applied those laws to juvenile defendants awaiting resentencing. In *Oliver v. Magnolia Clinic*, 11-2132, 11-2139, 11-2142, p. 7 (La. 3/13/12), 85 So.3d 39, 44, the supreme court stated, "[T]rial courts and courts of appeal are bound to follow the last expression of law of the Louisiana Supreme Court." In *State v. Bertrand*, 08-2215, 08-2311, p. 8 (La. 3/17/09), 6 So.3d 738, 743, the supreme court, when discussing the use of non-unanimous jury verdicts, stated, "[A] trial judge is not at liberty to ignore the controlling jurisprudence of superior courts." Furthermore, in *State v. Saulny*, 16-734, p. 14 (La.App. 5 Cir. 5/17/17), 220 So.3d 871, 881, the fifth circuit stated, "As an intermediate appellate court, this Court is obligated to follow the precedent established by the Louisiana Supreme Court." Accordingly, the only options available to the trial court in this case were to maintain the previously imposed sentence of life without benefit of parole or resentence the Defendant to life with benefit of parole pursuant to La.Code Crim.P. art. 878.1 and La.R.S. 15:574.4.

In *State v. Shaw*, 51,325 (La.App. 2 Cir. 5/17/17), 223 So.3d 607, the defendant argued that La.Code Crim.P. art. 878.1 and La.R.S. 15:574.4 (E) did not apply to him because they were not in effect at the time he committed the offense. The second circuit stated:

20

Eligibility for parole is the sole question to be answered in a *Miller* hearing; and, accordingly, there is no consideration of whether there should be a downward departure from the mandatory sentence of life imprisonment at hard labor. Rather, the trial court considers only whether that mandatory sentence should include parole eligibility.

*Id.* at 613.

In *State v. Jackson*, 51,527, p. 4 (La.App. 2 Cir. 8/9/17), __ So.3d __, __ the second circuit stated:

> The sole question to be answered in a *Miller* hearing is whether the defendant should have a chance for parole. *State v. Calhoun*, [51,337 (La.App. 2 Cir. 5/17/17), 222 So.3d 903]. Accordingly, there is no consideration of whether there should be a downward departure from the mandatory sentence of life imprisonment at hard labor. Rather, the trial court considers only whether that mandatory sentence should include parole eligibility. *State v. Brown*, 51,418 (La. App. 2 Cir. 6/21/17), —— So.3d ——, 2017 WL 2665128; *State v. Shaw*, [51,325 (La.App. 2 Cir. 5/17/17), 223 So.3d 607]. Access to the parole board for consideration of parole meets the requirements of *Miller*. *State v. Kelly*, 51,246 (La. App. 2 Cir. 4/5/17), 217 So.3d 576; *Doise*.

The court continued:

> To the extent that the defendant argues that he was entitled to a hearing and the imposition of an individualized sentence, *Miller* did not impose such a requirement in cases where parole eligibility was permitted. In *Miller*, the Supreme Court explained that the Eighth Amendment does not prohibit a court from imposing a sentence of life imprisonment with the opportunity for parole for a juvenile homicide offender, nor does it require the court to consider the mitigating factors of youth before imposing such a sentence. Instead, a sentencing court's obligation to consider youth-related mitigating factors is limited to cases in which the court imposes a sentence of life, or its equivalent, without parole. *State v. Plater*, [51,338 (La.App. 2 Cir. 5/17/17), 222 So.3d 897]; *State v. Calhoun*, *supra*.

*Id.* at 5.

In *State v. Sumler*, 51,324, p. 9 (La.App. 2 Cir. 5/2/17), 219 So.3d 503, 509, the second circuit found "in a *Miller* hearing there is no consideration of whether there should be a downward departure from the mandatory sentence of life imprisonment at hard labor. Rather, the court ***only*** considers whether that mandatory sentence should include parole eligibility."

In *State v. Thompson*, 51,674 (La.App. 2 Cir. 11/15/17), __ So.3d __, the second circuit addressed a claim that the trial court erred in resentencing the defendant to life with parole pursuant to La.R.S. 15:574(E) without holding a resentencing hearing to determine the appropriate sentence for a person who was unconstitutionally sentenced to life without parole as a juvenile, thereby denying an individualized sentence and an opportunity to develop a record for alternative sentencing under *Dorthey*, 623 So.2d 1276. The court noted that parole eligibility was the sole question to be answered in a *Miller* hearing and went on to hold:

> In the instant case, the state did not attempt to show that Thompson was the worst of offenders. He received the substantive benefit of *Miller* and *Montgomery*, supra and the due process of La. C. Cr. P. 878.1 and R.S. 15:574.4. A full resentencing hearing was not required, as no amount of mitigating evidence would warrant any lesser sentence than he has already received, the most lenient sentence available to him under the current law. The claim to relitigate the entire sentence is completely groundless. *Montgomery v. Louisiana*, *supra*; *State v. Keith*, [51,389 (La.App. 2 Cir. 6/21/17), 223 So.3d 767]. This assignment of error lacks merit.

*Thompson*, __ So.3d __, __. The court further stated:

> In general, a district court has discretion to find that a mandatory minimum sentence may indeed be excessive for a given offense and offender. *State v. Dorthey*, [623 So.2d 1226 (La.1993)]. However, in the context of a *Miller* hearing, the only question for the court is eligibility for parole. *State v. Keith*, *supra*; *State v. Shaw*, [51,325 (La.App. 2 Cir. 5/17/17), 223 So.3d 607]; *State v. Sumler*. Thompson received the most lenient sentence available under the current law, and the state was not required to relitigate the entire sentence.

*Id.* at 4.

The Ninth Judicial District Court was bound to follow the decision in *Montgomery*, 194 So.3d 606, as it was the last expression of law by the Louisiana Supreme Court. Because the district court was bound to follow *Montgomery*, the remedy set out in *Craig*, 340 So.2d 191, was not available to the Defendant. *See State v. Dupre*, 16-1352, p. 5 (La.App. 1 Cir. 4/12/17) (unpublished opinion). In

*State v. Straub*, 12-270, pp. 5-6 (La.App. 1 Cir. 9/21/12), 111 So.3d 38, 41, the

first circuit stated:

> Although the *Shaffer* court did not expressly overrule *Craig* (wherein the Louisiana Supreme Court remanded for resentencing for aggravated rape to the most serious penalty for the next available responsive verdict, which is attempted aggravated rape), it is clear that the Court considered and rejected the *Craig* remedy, albeit without explanation. *Shaffer*, 77 So.3d at 941 n. 3.

*See also State v. Walder*, 12-51, p. 6 (La.App. 1 Cir. 9/24/12), 104 So.3d 137, 141,

*writ denied*, 12-2534 (La. 4/19/13), 111 So.3d 1032. We additionally note that

*Craig*, 340 So.2d 901, has not been applied in any *Miller*/*Montgomery* case cited

by the parties or found in our review. Additionally, the Defendant was not entitled

to a downward departure under *Dorthey*, 623 So.2d 1276.

Finally, La.Code Crim.P. art. 878.1 was amended by 2017 La. Acts No. 277,

§ 2, and now provides:

> [B.](2) If an offender was indicted prior to August 1, 2017, for the crime of first degree murder (R.S. 14:30) or second degree murder (R.S. 14:30.1) where the offender was under the age of eighteen years at the time of the commission of the offense and a hearing was held pursuant to this Article prior to August 1, 2017, the following shall apply:

> (a) If the court determined at the hearing that was held prior to August 1, 2017, that the offender's sentence shall be imposed with parole eligibility, the offender shall be eligible for parole pursuant to R.S. 15:574.4(G).

> . . . .

> D. The sole purpose of the hearing is to determine whether the sentence shall be imposed with or without parole eligibility. The court shall state for the record the considerations taken into account and the factual basis for its determination. Sentences imposed without parole eligibility and determinations that an offender is not entitled to parole eligibility should normally be reserved for the worst offenders and the worst cases.

Louisiana Revised Statutes 15:574.4 was also amended by 2017 La. Acts No. 277,

§ 2, and provides:

G. (1) Notwithstanding any provision of law to the contrary, any person serving a sentence of life imprisonment for a conviction of first degree murder (R.S. 14:30) or second degree murder (R.S. 14:30.1) who was under the age of eighteen years at the time of the commission of the offense and whose indictment for the offense was prior to August 1, 2017, shall be eligible for parole consideration pursuant to the provisions of this Subsection if a judicial determination has been made that the person is entitled to parole eligibility pursuant to Code of Criminal Procedure Article 878.1(B) and all of the following conditions have been met:

(a) The offender has served twenty-five years of the sentence imposed.

(b) The offender has not committed any major disciplinary offenses in the twelve consecutive months prior to the parole hearing date. A major disciplinary offense is an offense identified as a Schedule B offense by the Department of Public Safety and Corrections in the Disciplinary Rules and Procedures for Adult Offenders.

(c) The offender has completed the mandatory minimum of one hundred hours of pre-release programming in accordance with R.S. 15:827.1.

(d) The offender has completed substance abuse treatment as applicable.

(e) The offender has obtained a GED certification, unless the offender has previously obtained a high school diploma or is deemed by a certified educator as being incapable of obtaining a GED certification due to a learning disability. If the offender is deemed incapable of obtaining a GED certification, the offender shall complete at least one of the following:

(i) A literacy program.

(ii) An adult basic education program.

(iii) A job skills training program.

(f) The offender has obtained a low-risk level designation determined by a validated risk assessment instrument approved by the secretary of the Department of Public Safety and Corrections.

(g) The offender has completed a reentry program to be determined by the Department of Public Safety and Corrections.

(2) For each offender eligible for parole consideration pursuant to the provisions of this Subsection, the board shall meet in a three-member panel, and each member of the panel shall be provided with

and shall consider a written evaluation of the offender by a person who has expertise in adolescent brain development and behavior and any other relevant evidence pertaining to the offender.

(3) The panel shall render specific findings of fact in support of its decision.

By way of the 2017 amendments to La.Code Crim.P. art. 878.1 and La.R.S. 15:574.4, the Louisiana Legislature has now specifically applied those provisions to the Defendant and ratified the decision of the district court granting the Defendant parole eligibility.

For the reasons set forth herein, we find assignments of error one, two, and three lack merit.

**ASSIGNMENT OF ERROR NUMBER FOUR**

In the fourth assignment of error, appellate counsel contends that the attorney appointed to represent the Defendant at the resentencing proceeding was ineffective. Appellate counsel contends the attorney who represented the Defendant at resentencing was ineffective in the following respects: 1) he did not present evidence of the Defendant's maturity and rehabilitation so as to demonstrate that he deserved a sentence less than life with parole; 2) he did not argue the sentence imposed should be that for manslaughter; 3) he did not investigate the issues, the Defendant's background, or achievements while incarcerated; 4) he made no argument on the Defendant's behalf when pressed for information; and 5) while the Defendant was still present, counsel moved on to another client.

Appellate counsel contends that the Defendant was entitled to a *Miller* hearing under the version of La.Code Crim.P. art. 878.1 in effect in March 2017. At that time, the statute read:

A. In any case where an offender is to be sentenced to life imprisonment for a conviction of first degree murder (R.S. 14:30) or

25

second degree murder (R.S. 14:30.1) where the offender was under the age of eighteen years at the time of the commission of the offense, a hearing shall be conducted prior to sentencing to determine whether the sentence shall be imposed with or without parole eligibility pursuant to the provisions of R.S. 15:574.4(E).

B. At the hearing, the prosecution and defense shall be allowed to introduce any aggravating and mitigating evidence that is relevant to the charged offense or the character of the offender, including but not limited to the facts and circumstances of the crime, the criminal history of the offender, the offender's level of family support, social history, and such other factors as the court may deem relevant. Sentences imposed without parole eligibility should normally be reserved for the worst offenders and the worst cases.

Appellate counsel argues that even though the statute limited the issue at the hearing to parole eligibility, nothing deprived the district court of its ability to impose a lesser sentence under the holding in *Dorthey*, 623 So.2d 1276.

The first circuit discussed *Dorthey* in *State v. Scott*, 17-209, p. 5 (La.App. 1 Cir. 9/15/17), 228 So.3d 207, 211, as follows:

In *State v. Dorthey*, 623 So.2d 1276, 1280-81 (La. 1993), the Louisiana Supreme Court opined that if a trial judge were to find that the punishment mandated by La. R.S. 15:529.1 makes no "measurable contribution to acceptable goals of punishment" or that the sentence amounted to nothing more than "the purposeful imposition of pain and suffering" and is "grossly out of proportion to the severity of the crime", he has the option, indeed the duty, to reduce such sentence to one that would not be constitutionally excessive. In *State v. Johnson*, 97-1906 (La. 3/4/98), 709 So.2d 672, 676–77, the Louisiana Supreme Court reexamined the issue of when *Dorthey* permits a downward departure from the mandatory minimum sentences in the Habitual Offender Law. While both *Dorthey* and *Johnson* involve the mandatory minimum sentences imposed under the Habitual Offender Law, the Louisiana Supreme Court has held that the sentencing review principles espoused in *Dorthey* are not restricted in application to the penalties provided by La. R.S. 15:529.1. *See State v. Fobbs*, 99-1024 (La. 9/24/99), 744 So.2d 1274 (per curiam); *State v. Collins*, 2009-1617 (La. App. 1st Cir. 2/12/10), 35 So.3d 1103, 1108, *writ denied*, 2010-0606 (La. 10/8/10), 46 So.3d 1265.

Appellate counsel notes the Defendant must prove that counsel's performance was deficient and that he was prejudiced by counsel's performance during sentencing to be entitled to a new sentencing hearing. Appellate counsel

further notes that because ineffective assistance of counsel at sentencing proceedings is not a basis for post-conviction relief, the claim must be addressed on direct appeal. Appellate counsel cites *State v. Boyd*, 14-408 (La.App. 4 Cir. 2/11/15), 164 So.3d 259, in support of her claim. Therein, the court stated:

> Both the Louisiana and United States Constitutions afford criminal defendants the right to the effective assistance of counsel at sentencing. *See* U.S. Const. amend. VI; La. Const. art. I, § 13. *See also McMann v. Richardson*, 397 U.S. 759, 771 n. 14, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970).
>
> In order to be entitled to a new sentencing hearing as a result of his claim that his counsel's assistance was constitutionally-ineffective, [the defendant] must establish both prongs of the test set out in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *See Lafler v. Cooper*, [566] U.S. [156], 132 S.Ct. 1376, 1385–6, 182 L.Ed.2d 398 (2012). First, [the defendant] must prove that counsel's performance was deficient, which requires showing that serious errors were made such that counsel was no longer functioning as the "counsel" guaranteed by the Sixth Amendment. *See Strickland*, 466 U.S. at 687, 104 S.Ct. 2052. Second, [the defendant] must prove that he was prejudiced by counsel's deficient performance during sentencing. *See id.* Unless [the defendant] succeeds in making both showings, we cannot find that his sentence "resulted from a breakdown in the adversary process that renders the result unreliable." *Id.* A trial judge, however, need not "address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697, 104 S.Ct. 2052.
>
> To show that counsel's assistance was deficient, [the defendant] must show that counsel's "representation fell below an objective standard of reasonableness." *Id.* at 688, 104 S.Ct. 2052. The reasonableness of counsel's performance must be measured "under prevailing professional norms" and "considering all the circumstances." *Id.* "Judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689, 104 S.Ct. 2052. We do "'not sit to second-guess strategic and tactical choices made by trial counsel.'" *State v. Hoffman*, 98–3118, p. 40 (La.4/11/00); 768 So.2d 542, 579 quoting *State v. Myles*, 389 So.2d 12, 31 (La.1979)). And a reviewing court must always "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . ." *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052.
>
> [The defendant] "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* at 690, 104 S.Ct. 2052. . . .
>
> . . . .

"An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691, 104 S.Ct. 2052. "The purpose of the Sixth Amendment guarantee of counsel is to ensure that a defendant has the assistance necessary to justify reliance on the outcome of the proceeding. Accordingly, any deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution." *Id.* at 691–92, 104 S.Ct. 2052.

[The defendant] bears the burden of proving prejudice. *See id.* at 693, 104 S.Ct. 2052. That is, [the defendant] "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694, 104 S.Ct. 2052. This assessment of prejudice should also "proceed on the assumption that the decisionmaker is reasonably, conscientiously, and impartially applying the standards that govern the decision." *Id.* at 695, 104 S.Ct. 2052.

"Even though sentencing does not concern a defendant's guilt or innocence, ineffective assistance of counsel during a sentencing hearing may result in prejudice within the compass of *Strickland* . . . because 'any amount of additional jail time has Sixth Amendment significance.' " *See State v. Mills*, 13–1901, p. 3 (La.3/21/14); 137 So.3d 8, 10 (per curiam) (quoting *Glover v. United States*, 531 U.S. 198, 203, 121 S.Ct. 696, 148 L.Ed.2d 604 (2001)) (citations and punctuation omitted). Counsel's errors at sentencing have prejudiced a defendant when "there is a reasonable probability that the defendant's sentence would have been significantly less harsh. . . .' " *See Mills*, 13–1901, p. 3; 137 So.3d at 10. *See also* [*State v.*] *Sparks*, 88–0017, p. 61 [(La. 5/11/11)]; 68 So.3d [435] at 482. Prior to making this determination, the trial judge should consider "such factors as the defendant's actual sentence, the potential minimum and maximum sentences that could have been received, the placement of the actual sentence within the range of potential sentences, and any relevant mitigating or aggravating circumstances." *See Mills*, 13–1901, p. 3; 137 So.3d at 10. And of course the trial judge who imposed the sentence initially is uniquely situated to determine whether any errors by counsel at sentencing would have resulted in a substantially less harsh sentence.

## II

Ineffective-assistance-of-counsel claims are ideally and typically addressed in a post-conviction or collateral-review proceeding in the trial court, not on appeal. *See State v. Watson*, 00–1580, p. 4 (La.5/14/02); 817 So.2d 81, 84. *See also State v. Small*, 13–1334, p. 13 (La.App. 4 Cir. 8/27/14); 147 So.3d 1274, 1283. "The

rationale behind such procedure is that a full evidentiary hearing may be conducted to explore the issue." *Watson*, 00–1580, p. 4; 817 So.2d at 84 (citing *State v. Stowe*, 93–2020 (La.4/11/94); 635 So.2d 168, 173). Thus, defendants are afforded the opportunity to expand upon and prove their allegations through the introduction of evidence in post-conviction proceedings.

An ineffective-assistance-of-counsel-at-sentencing claim, however, is not cognizable in post-conviction proceedings when, as here, the sentence imposed by the trial judge is within the authorized range of the sentencing statutes. *See State v. Cotton*, 09–2397, p. 2 (La.10/15/10); 45 So.3d 1030, 1031 (per curiam). *See also State v. Pernell*, 14–0678, p. 5 (La.App. 4 Cir. 10/15/14); 151 So.3d 940, 945. Article 930.3 of the Louisiana Code of Criminal Procedure, which enumerates the grounds upon which post-conviction relief may be granted, "'provides no basis for review of claims of excessiveness *or other sentencing error* post-conviction.'" *State v. Thomas*, 08–2912 (La.10/16/09); 19 So.3d 466 (quoting *State ex rel. Melinie v. State*, 93–1380 (La.1/12/96); 665 So.2d 1172 (per curiam)) (emphasis added). *See also* La.C.Cr.P. art. 930.3. And a "habitual offender adjudication . . . constitutes *sentencing* for purposes of *Melinie* and La.C.Cr.P. art. 930.3. . . ." *Cotton*, 09–2397, p. 2; 45 So.3d at 1030 (emphasis added). *See also Thomas*, 08–2912; 19 So.3d 466. Thus, no statutory vehicle is offered for post-conviction consideration of claims of ineffective assistance of counsel arising out of habitual offender proceedings. *See Cotton*, 09–2397, p. 2; 45 So.3d at 1030.

Because [the defendant's] claim is not cognizable in a post-conviction proceeding, we cannot refer the claim to a post-conviction proceeding and must consider on direct review his claim that counsel rendered ineffective assistance at sentencing. *See Mills*, 13–1901, p. 2; 137 So.3d at 10. But the record in this matter is insufficient for us to make a proper determination as is often the case in ineffective-assistance-of-counsel claims. We do not have any testimony or evidence in the record to explain the absence of any documentation or expert testimony which might have supported or corroborated the information which [the defendant] as well as his aunt told the trial judge at sentencing about [the defendant's] mental health. Notably, the trial judge did not mention or comment about [the defendant's] mental health.

## III

Not only is the record as presently constituted insufficient for us to decide whether [the defendant] can establish both prongs of the *Strickland* test, but also, as we have already stated, the particular trial judge who actually imposed the thirty-five year sentence is best situated to decide whether any deficiency on the part of sentencing counsel resulted in a significantly harsher sentence for [the defendant].

29

We therefore remand the matter to the trial court for a full evidentiary hearing and decision on [the defendant's] ineffective-assistance-of-counsel-at-sentencing claim. *See Sparks*, 88–0017, p. 66; 68 So.3d at 485 (citing *State v. Strickland*, 94–0025, p. 51 (La.11/1/96); 683 So.2d 218, 238–9).

*Id.* at 262-65 (footnote omitted).

Appellate counsel asserts that neither a full evidentiary hearing nor a presentence investigation report were conducted in this matter. Further, counsel at resentencing failed to ask for a full evidentiary hearing, failed to object to the denial of such a hearing, and failed to proffer mitigating evidence. She claims that because the issue of counsel's ineffectiveness cannot be determined from the record, the matter should be remanded for an evidentiary hearing on counsel's ineffectiveness.

The State contends that a "*Miller* hearing is mandated when and only when the State objects to parole eligibility of the defendant and seeks to maintain the sentence of life imprisonment without the possibility of parole." The State avers that because it took the position that the Defendant was entitled to parole eligibility and the Defendant was sentenced to life with the possibility of parole, the necessity for a *Miller* hearing is rendered moot. In support of its argument, the State cites *Sumler*, 219 So.3d 503, wherein the second circuit stated the only consideration at a *Miller* hearing was whether the mandatory sentence should include parole eligibility.

According to *Montgomery*, 136 S.Ct. at 736, and Justice Crichton's concurrence in *Montgomery*, 194 So.3d 606, the only issue to be considered in a *Miller* hearing is a defendant's eligibility for parole. In *Doise*, 185 So.3d at 344, this court stated:

We find nothing in *Miller* that requires the trial court to consider certain factors prior to determining whether the juvenile's sentence will be imposed with or without parole. Rather, *Miller*

30

simply held "that the Eighth Amendment forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders." *Miller*, [567] U.S. at [479], 132 S.Ct. [2455] at 2469.

Based on these cases and the findings in *State v. Kelly*, 51,246 (La.App. 2 Cir. 4/5/17), 217 So.3d 576; *Sumler*, 219 So.3d 503; *Shaw*, 223 So.3d 607; *Calhoun*, 222 So.3d 903; *Thompson*, __ So.3d __; *Brown*, __ So.3d __; and *Jackson*, __ So.3d __, we find the matter need not be remanded to the trial court for a determination of counsel's ineffectiveness, as the Defendant cannot prove counsel's performance at resentencing was deficient. Additionally, appellate counsel makes no argument to this court that but for counsel's errors at the resentencing hearing, there was a reasonable probability that the Defendant's sentences would have been significantly less harsh.

Moreover, the Defendant was sentenced to death twice, and those sentences commuted to life imprisonment prior to the decision in *Miller*, 567 U.S. 460. After *Miller*, the Defendant was granted the possibility of parole. The Defendant has benefitted as a result of his mental condition and his age at the time of the offenses. We find the likelihood of the trial court departing from the mandatory sentences in this matter is nil.

For these reasons, we find this assignment of error lacks merit.

### ASSIGNMENT OF ERROR NUMBER FIVE

In the fifth assignment of error, appellate counsel contends the trial judge erred in granting the State's "Motion to Correct Sentence Without Hearing" following the entry of an order of appeal because the action was outside the ambit of her jurisdiction. In addition, if the order of the court is construed as a resentencing, the failure to obtain the presence of the Defendant constituted error pursuant to La.Code Crim.P. art. 835.

31

The Defendant was resentenced to life imprisonment with the benefit of parole on March 27, 2017. On April 13, 2017, the Defendant filed a "Motion to Reconsider Sentence" and a "Notice of Appeal." On April 27, 2017, the motion for reconsideration was denied, and the notice of appeal granted. The State filed a "Motion to Correct Sentence Without Hearing" on June 14, 2017, and the district court signed an order granting the motion and sentencing the Defendant to life imprisonment with benefit of parole on June 20, 2017.

Appellate counsel argues the district court lacked authority to resentence the Defendant once the motion to reconsider was denied and the appeal granted. Thus, the order issued on June 20, 2017, should be vacated. Counsel asserts the "State's motion apparently concedes that the imposition of sentence without the hearing mandated by *C.Cr.P. art. 878.1* made the sentence an illegal one subject to correction even though the case was on appeal."[4] If the district court and the State determined that the Defendant needed to be resentenced because the sentence imposed was illegal, then the Defendant's presence was required by La.Code Crim.P. art. 835. Louisiana Code of Criminal Procedure Article 835 provides, "In felony cases the defendant shall always be present when sentence is pronounced." Appellate counsel also cites La.Code Crim.P. art. 916, which states:

> The jurisdiction of the trial court is divested and that of the appellate court attaches upon the entering of the order of appeal. Thereafter, the trial court has no jurisdiction to take any action except as otherwise provided by law and to:
>
> . . . .
>
> (2) Correct an error or deficiency in the record.
>
> (3) Correct an illegal sentence or take other appropriate action pursuant to a properly made or filed motion to reconsider sentence.

---

[4]We find the State's motion does not equate to a concession regarding the legality of the Defendant's sentences.

. . . .

(7) Impose the penalty provided by Article 844.

(8) Sentence the defendant pursuant to a conviction under the Habitual Offender Law as set forth in R.S. 15:529.1.

Appellate counsel also cites *State v. White*, 13-1192, p. 6 (La.App. 1 Cir. 7/21/14), 156 So.3d 176, 180, wherein the court stated: "When the original sentence imposed is legal, none of the actions specified in Article 916 confer jurisdiction or authority upon a district court to impose a new sentence after an appeal is taken."

The State contends the Defendant is appealing the addition of parole eligibility to his life sentence, and its motion requested the "exact same relief and is rendered moot by this appeal." The State then incorporates the "entirety of the arguments briefed above in support of its Motion."

The trial court's June 20, 2017 order required the Defendant to serve the same sentence as that imposed at the resentencing hearing held on March 27, 2017, at which the Defendant was present. Accordingly, we hold that regardless of whether the trial court lacked authority to rule on the State's motion, any error in doing so was harmless.

**PRO SE ASSIGNMENT OF ERROR NUMBER ONE**

In his first pro se assignment of error, the Defendant contends the trial court violated the substantive constitutional rule change announced in *Miller*, 567 U.S. 460, and *Montgomery*, 136 S.Ct. 718, that the Eighth Amendment guarantees a juvenile offender under the age of eighteen years old "whose crime reflects unfortunate yet transient immaturity" "an individualize sentence." The Defendant contends the trial court sentenced him as though *Miller*, 567 U.S. 460, was a procedural rule change allowing retrospective application of "newly [sic] legislative enactments." Additionally, he claims the district court intentionally

33

disobeyed a substantive constitutional rule laid down in *Roper v. Simmons*, 543 U.S. 551, 125 S.Ct. 1183 (2005); *Graham*, 560 U.S. 48; and *Miller*, 567 U.S. 460, that mandatory life without parole for juvenile offenders whose crimes reflected transient immaturity violated the proportionality concept central to the Eighth Amendment. The Defendant contends that, although the district court may have felt the Parole Board should have considered when he should be released, the United States Supreme Court made it clear that the task of interpreting the Eighth Amendment remains the court's responsibility. The Defendant further argues the district court was obligated to do more than simply let the State sentence him.

Based on the statement in *Montgomery*, "[a] State may remedy a *Miller* violation by permitting juvenile homicide offenders to be considered for parole, rather than by resentencing them," and the cases cited in the discussion of assignments of error one, two, and three, we find this assignment of error lacks merit. *Montgomery*, 136 S.Ct. at 736.

### PRO SE ASSIGNMENT OF ERROR NUMBER TWO

In his second pro se assignment of error, the Defendant contends the district court denied his Fifth Amendment protection to fair notice of what sentence the State expected him to serve. The Defendant contends that fair warning has long been part of our justice system and is recognized as fundamental to our concept of constitutional liberty. Due process also guarantees that a person receive fair notice of the conduct that will subject him to punishment as well as the severity of the penalty that may be imposed. The Defendant avers the penalty at issue has been found unconstitutional twice, and the legislature has failed to prescribe a substantive penalty for juveniles such as him. The Defendant argues that passing the ultimate decision off to the Parole Board is not a judicially imposed sentence.

As previously noted, life without parole is still a constitutionally acceptable sentence for juveniles convicted of first degree murder. *Miller*, 567 U.S. at 480. Additionally, a *Miller* violation may be remedied by permitting juvenile homicide offenders to be considered for parole rather than by resentencing them. *Montgomery*, 136 S.Ct. at 736. The *Montgomery* decision was rendered on January 25, 2016. At that time, the Defendant was put on notice that he need not be resentenced but merely considered for parole. Furthermore, in *Montgomery*, 194 So.3d 606, the Louisiana Supreme Court found La.Code Crim.P. art. 878.1 and La.R.S. 15:574.4(E) were applicable to those defendants awaiting resentencing, and Justice Crichton stated entitlement to parole eligibility was the sole question to be answered at a *Miller* hearing. That case was decided on June 28, 2016, which was almost nine months prior to the Defendant's resentencing hearing. Furthermore, in *Harper*, __ So.3d __, the defendant argued his sentence imposed under La.R.S. 15:574.4(E) violated due process by failing to provide fair notice. The second circuit addressed the issue, stating:

> The elements required for proof of second degree murder have not changed since the crime was committed in 1990, and the potential sentence for committing that crime remains life imprisonment at hard labor. The only difference now is that the court may impose the sentence with the benefit of parole eligibility, which is a less harsh sentence. Thus, Harper was not deprived of fair warning that his conduct would constitute criminal behavior or prejudiced because his potential sentence was not made more severe by application of La. R.S. 15:574.4(E).

*Id.* at 3.

Consequently, this assignment of error lacks merit.

### PRO SE ASSIGNMENT OF ERROR NUMBER THREE

In his third pro se assignment of error, the Defendant contends the district court denied him substantive due process when it imposed reformatory consideration instead of legislatively mandated punishment in response to *Miller*'s

substantive rule change. The Defendant argues that due process demands he receive a penalty fixed by the legislature. The Defendant contends that La.R.S. 15:574.4(E) is not a sentencing penalty for juveniles but contains factors the Parole Board must consider before releasing a juvenile on parole. The Defendant avers the only penalty in effect for first degree murder is mandatory life imprisonment, and that has been declared unconstitutional. Thus, he claims, there is no legislatively prescribed penalty for juvenile offenders such as himself.

For the reasons set forth in the discussion of assignments of error numbers one, two, and three and pro se assignment of error number two, we find this assignment of error lacks merit.

## PRO SE ASSIGNMENT OF ERROR NUMBER FOUR

In his fourth pro se assignment of error, the Defendant contends the district court erred when it denied his Fifth Amendment and due process protections against the unforeseeable retroactive judicial expansion of La.R.S. 15:574.4's precise statutory language. He also states the district court denied him due process when it retroactively expanded La.R.S. 15:574.4(E) to juvenile offenders such as himself. The Defendant avers the district court imposed the sentence based on the Louisiana Supreme Court's decision in *Montgomery*, 194 So.3d 606, which was decided decades after he committed the offenses and retroactively applied to his case. The Defendant contends he has the constitutional right to know the severity of the penalty that the State may impose. Thus, according to Defendant, the principle articulated in *Bouie v. City of Columbia*, 378 U.S. 347, 84 S.Ct. 1697 (1964), applies. In *Bouie*, the Court stated, "If a judicial construction of a criminal statute is 'unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue,' it must not be given retroactive effect." *Id.* at 354.

For the reasons set forth in the discussion of assignments of error numbers one, two, and three and pro se assignment of error number two, this assignment of error also lacks merit.

## PRO SE ASSIGNMENT OF ERROR NUMBER FIVE

In his fifth pro se assignment of error, the Defendant contends the district court violated both the state and federal ex post facto clauses when it applied newly-created reformatory procedures not in existence at the time the offenses occurred instead of imposing a substantive penalty legislatively prescribed as required by the Constitution. The Defendant contends the retroactive application of La.R.S. 15:574.4(E) to him violates the ex post facto clause.

The Defendant notes that Louisiana jurisprudence has consistently held that the law in effect at the time of the commission of the offense is determinative of the penalty which the convicted must suffer. The Defendant claims the district court altered the terms and conditions of a "penalty that does not exist," and it made the heart of the *Miller* decision moot regardless of what it heard and of what the Eighth Amendment required after *Miller*, 567 U.S. 460. Moreover, Defendant claims the district court was determined to impose a life sentence. He argues that the change in the law presents a sufficient risk of increasing his punishment. He notes that first and second degree murder still provide for a mandatory life sentence without benefits. The Defendant avers that Louisiana took the most narrow reading of *Miller* in crafting a statute that effectively preserves the brutal life sentence for offenders under eighteen by limiting sentencing courts to solely determining whether a sentence shall be imposed with or without parole eligibility. The Defendant argues the limiting language means there has been no change in Louisiana, and the addition of the possibility of parole is meaningless in Louisiana. The Defendant declares that because he has no right to parole, Louisiana has

37

effectively denied what *Miller* sought to guarantee. Further, as long as the Board of Parole has the authority to deny parole, life without parole remains a possibility regardless of the individual's situation. Also, he claims the statutory scheme in Louisiana sets arduous conditions that an inmate must achieve through programs created by the executive branch, including education, disciplinary, and other hurdles that can be characterized only as burdens on whatever relief eligibility might be. Absent compliance with the conditions, Defendant avers there is no chance of parole eligibility.

In *Calhoun*, 222 So.3d at 907, the second circuit addressed the defendant's ex post facto claim regarding resentencing at a *Miller* hearing:

> The law in effect at the time of the crime determines the penalty to be suffered by the criminal. *State v. Sugasti*, 01-3407 (La. 6/21/02), 820 So.2d 518. Article I § 10 of the United States Constitution and La. Const. art. I, § 23 prohibit *ex post facto* application of the criminal law by the state. The focus of the *ex post facto* inquiry is whether a new law *redefines criminal conduct* or *increases the penalty* by which the crime is punishable. *State v. Williams*, 00-1725 (La. 11/28/01), 800 So.2d 790; *State ex rel. Olivieri v. State*, 00-0172 (La. 2/21/01), 779 So.2d 735, *cert. denied*, 533 U.S. 936, 121 S.Ct. 2566, 150 L.Ed.2d 730 (2001). Clearly, the instant situation does neither. The trial court scrupulously awarded this defendant all to which he was entitled in parole consideration under the guidelines in La. R.S. 15:574.4(E).

> This sentence is not illegal. He received the mandatory minimum sentence available under *Miller*, La. R.S. 14:30, and La. C. Cr. P. art. 878.1. As this Court noted in [*State v.*] *Fletcher*, [49,303 (La.App. 2 Cir. 10/1/14), 149 So.3d 934, *writ denied*, 14-2205 (La. 6/5/15), 171 So.3d 945, *cert. denied*, __ U.S. __, 136 S.Ct. 254 (2015)], the legislature was not required to amend the murder statutes to provide for sentencing of juvenile homicide defendants. The legislature designed an adequate solution to *Miller* by creating statutes relating to parole eligibility for juvenile homicide defendants which are to be read in conjunction with the murder statutes. He has a chance at parole, but he will have to earn it. This scheme is reasonable and satisfies *Miller*, *supra*.

In *Harper*, __ So.3d at __, the court stated: "Harper's argument that his sentence under La. R.S. 15:574.4(E) is an *ex post facto* violation has been rejected.

The new law does not redefine criminal conduct or increase the penalty by which the crime is punishable."

The Defendant's ex post facto claim lacks merit. Additionally, the Defendant's claims regarding Louisiana's response to *Miller*, 567 U.S. 460, were addressed in our discussion of assignments of error numbers one, two, and three and also lack merit.

## DISPOSITION

The Defendant's sentences are affirmed.

**SENTENCES AFFIRMED.**